James E. **GROSSBERG** et al.

v.

Laverne **DEUSEBIO** et al.

Civ. A. No. 74–0248–R.

United States District Court,
E. D. Virginia,
Richmond Division.

June 7, 1974.

On Motion to Dismiss July 22, 1974.

Arthur F. Samuel, Richmond, Va., Richard E. Crouch, Arlington, Va., for plaintiffs.

William G. Broaddus, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

The Court is here asked to decide a claim in an area which has invariably produced constitutional adjudication of the most sensitive and difficult nature. That claim centers on action which hovers at the periphery of judicial precedent relating to the religion clauses. While such a claim is no less demanding of protection should it prove well taken, it occupies a realm concerning which Chief Justice Burger spoke for all Judges when he wrote that "candor compels the acknowledgment that we can only dimly perceive the boundaries of permissible governmental activity in this sensitive area," Tilton v. Richardson, 403 U.S. 672, 678, 91 S.Ct. 2091, 2095, 29 L.Ed.2d 790 (1971). Furthermore, expedited adjudication is required by the imminency of the alleged harm, coupled with the Court's desire and obligation to afford the litigants the benefit of a higher court review expeditiously. All of which compounds the difficulty and impossibility of the full deliberation which the issue warrants.[1]

Plaintiffs, high school graduating seniors and their parents, seek injunctive relief from alleged imminent infringe-

1. The graduation exercises in issue are to be held Monday, June 10, 1974.

ment of their rights of religious liberty guaranteed by the Free Exercise and Establishment Clauses of the First Amendment. Jurisdiction is attained pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343. The case is before the Court on plaintiffs' motion for a preliminary injunction. The Court has received briefs, taken evidence and heard argument, hence the matter is now ripe for disposition.

The facts are as follows:

Plaintiff students are members of the graduating class at Douglas Freeman High School, a public school located in Henrico County. Defendants are members of the School Board of Henrico County, et al. The school has, in the past, held graduation ceremonies which have included an invocation and benediction. The decision to have the invocation, which customarily consists of a short, audible prayer, again this year was made by the senior class acting through its class representatives. All expenses associated with the program, with the exception of the cost of printing diplomas, are borne by the senior class. Attendance at the graduation ceremony is, so far as the defendants are concerned, completely voluntary, and graduating seniors not attending may pick up their diplomas at any time after the ceremony or have the diplomas mailed to them. Plaintiffs have requested that an audible prayer not be delivered at this year's graduation ceremony and defendants have refused to institute the prohibition. Plaintiffs assert that defendants' failure to excise the public prayer constitutes a "law respecting the establishment of religion."

The Establishment Clause of the First Amendment "prohibited the Government common to all from becoming embroiled, however innocently, in the destructive religious conflicts of which the history of even this country records some dark pages," McCollum v. Board of Education, 333 U.S. 203, 228, 68 S.Ct. 461, 473, 92 L.Ed. 649 (1948) (Opinion of Frankfurter, J.). While religious belief free from coercion was protected by the Free Exercise Clause, the Establishment Clause was designed to remove both the overt and subtle coercive influences of the aligning of government prestige and support with any or all religions and thus to serve not only as a complement to the protections of Free Exercise, but to preserve the integrity of governmental institutions by maintaining them free from divisive effects of the attempts of various religious sects to achieve governmental action more to their liking.

> When government . . . allies itself with one particular form of religion, the inevitable result is that it incurs "the hatred, disrespect and even contempt of those who held contrary beliefs." Abington School District v. Schempp, 374 U.S. 203, 221–222, 83 S.Ct. 1560, 1571, 10 L.Ed.2d 844 (1963).

It is against the backdrop of these dangers that claims to Establishment Clause protection must be judged. *Abington, supra,* at 236 (Brennan, J. concurring).

In McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948), the Supreme Court struck down a procedure by which religious teachers, employed by private religious groups, were permitted to come weekly into the school buildings during regular school hours set apart for secular teaching and then for a period of thirty minutes substitute, in grades four through nine, their religious teaching for secular education provided under the compulsory education law. The religious instructors were subject to the approval and supervision of the superintendent of schools. Students who did not choose to take the religious instruction were not released from public school duties; they were required to leave their classrooms and go to some other place in the school building for pursuit of their secular studies. On these facts, the Court found:

> . . . the use of tax-supported property for religious instruction and the close cooperation between the school authorities and the religious council in

promoting religious education. The operation of the state's compulsory education system thus assists and is integrated with the program of religious instruction carried on by separate religious sects. Pupils compelled by law to go to school for secular education are released in part from their legal duty upon the condition that they attend the religious classes. This is beyond all question a utilization of the tax-established and tax-supported public school system to aid religious groups to spread their faith. 333 U.S. at 209–210.

In *McCollum*, Justice Frankfurter found the "momentum of the whole school atmosphere and school planning" to be behind the program. The program was repetitive and was concededly for the purposes of religious education. The "education" was directed at children in grades four through nine who are unduly susceptible to both indoctrination and peer group pressure, and education of this nature could as well be carried out at a time when school was not in session. Under these circumstances, the result could scarcely have been otherwise. Similar indicia of close and effective religious involvement in public education demanded invalidation of the prayer services at the beginning of each school day struck down in *Abington, supra*. In *Abington*, the prayers were found to be "part of the curricular activities of the students" and to be held under the supervision and with the participation of teachers employed in the schools. Furthermore, the Court approved the findings that the state intended the reading to be religious exercise. As such, their purpose and effect was a governmental inculcation of religious principles banned by the Establishment Clause. See similarly, Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1963).

■ An "invocation" is a prayer, and it is hard to conceive the purpose or effect of allowing a prayer being anything other than the advancement of religion. Defendants' argument that they have somehow divested themselves of responsibility for the invocation by submitting the question to a vote in the senior class must fail. A graduation ceremony for a public school class, held on public school grounds, and administered by public school personnel, at which diplomas are officially awarded by the administration, is a public school event. No vote of a majority of those participating can absolve conduct therein which abridges constitutional rights. As stated by Justice Jackson for the Court in West Virginia Board of Education v. Barnette, 319 U.S. 624, 638, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943):

> The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to . . . freedom of worship . . . and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.

A symbolic washing of hands, so to speak, by state officials cannot purge them of their responsibility. Indeed, the school board passed a resolution endorsing the view that the exercises be carried on in a traditional manner which, as Mr. Jackson stated, included the invocation and benediction prayers.

Plaintiffs' claim, then, has many of the indicia of a technical constitutional violation. But the Supreme Court has invariably emphasized "the importance of detailed analysis of the facts to which the Constitutional test of Separation is to be applied." McCollum v. Board of Education, 333 U.S. 203, 226, 68 S.Ct. 461, 472, 92 L.Ed. 649 (1948). (Opinion of Justice Frankfurter).

There is none of the repetitive or pedagogical function of the exercises which characterized the school prayer cases. There is no element of calculated indoctrination. The overall program of which the invocation will be a part is neither educational nor religious, but ceremonial, and the total length of the in-

vocation has been estimated as only a few minutes. Such an occasion with such an invocation has not occurred previously before this audience and it will not occur again. The event, in short, is so fleeting that no significant transfer of government prestige can be anticipated. There is no state financial outlay and the Court cannot visualize the organs of state government becoming infected by a divisive religious battle for control of this brief and transient exercise. Government here is not "embroiled" in religious matters.

Defendants have pointed out in their brief that invocations similar to those at issue here have dotted our history from our country's inception. Invocations are commonplace in the legislative chambers of both state and federal government and at celebrations of public holidays such as Thanksgiving and Memorial Day. If the Supreme Court decisions imply anything with direct regard to such events, it is that they are not to be considered constitutionally infirm. *Abington, supra*; Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962); Zorach v. Clausen, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952). The three lower courts which have addressed this issue directly have all found invocations in public ceremonies to be permissible. Wiest v. Mt. Lebanon School Dist., Pa. 320 A.2d 362 (1974); Lincoln v. Page, 109 N.H. 30, 241 A.2d 799 (1968); Wood v. Mt. Lebanon Township School Dist., 342 F.Supp. 1293 (W.D.Pa.1972).

Establishment claims have invariably produced difficult constitutional adjudication. In this area, it is

The duty of the courts is to strike the proper balance. The area is a sensitive one, involving questions of degree. The question is not whether there is any religious effect at all, but rather whether that effect, if present, is substantial. Allen v. Hickel, 138 U.S.App.D.C. 31, 424 F.2d 944, 949 (1970).

The test as enunciated by *Abington* is "Purpose and Effect." The effect is

highly problematical. The measure of constitutional adjudication is the ability and willingness to distinguish between real threat and mere shadow. See *Abington,* 374 U.S. 309.

We must bear in mind that the primary purpose of the occasion is ceremonial. It is a ceremony geared primarily to the award of honors and diplomas. All other portions of the program are peripheral to this function. It is difficult at this stage to conclude that the purpose and effect of the ceremony is the advancement or inhibition of religion or religious beliefs.

Without characterizing the nature of the contemplated invocation and/or benediction, I can hardly perceive that the few moments given to same creates any significant risk of significant aid to religion.

Not every involvement of religion in public life is violative of the Establishment Clause. As Justice Brennan said, what the framers meant to foreclose and what the Supreme Court decisions establish is that the Establishment Clause forbids those involvements of religious with secular institutions which (a) serve the essentially religious activities or religious institutions; (b) employ the organs of government for essentially religious purposes; or (c) use essentially religious means to serve governmental ends where secular means would suffice.

Any attempt to impose rigid limits upon the mention of a diety or references to religious principles would be fraught with dangers. To grant preliminary relief would to be to take the anticipated ceremony out of context. It would appear to be exactly what it purports to be—that is, a graduation ceremony.

The principle distilled from Everson v. Board of Education, 330 U.S. 1, 67 S. Ct. 504, 91 L.Ed. 711 (1947); McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948), and their progeny, is that the First Amendment was intended and has been interpreted

to forbid not only governmental preference of one religion over another, but any establishment or encouragement of religion by the state. In Abington School District v. Schempp, 374 U.S. at 222, the test was set out as follows, "What are the purpose and primary effect [of the actions under attack]. If either is the advancement or inhibition of religion then the [action] exceeds the scope of [state power] as circumscribed by the Constitution. That is to say that to withstand the strictures of the Establishment Clause there must be a secular purpose *and* a primary effect that neither advances or inhibits religion." *Abington*, at 222.

■ Just as an indirect and incidental effect beneficial to religion or religious institutions has never been held to constitute a defect sufficient to warrant invalidation of legislation giving rise to such beneficial effects, neither should, at least at this stage of the proceedings, such indirect and incidental beneficial effect to the propagation of religion which might flow from the brief periods allotted to the invocation and benediction contemplated as part of the graduation ceremony be held to constitute a defect sufficient to grant the relief here sought. See Committee v. Nyquist, 413 U.S. 756, at 2965, 93 S.Ct. 2955, 37 L. Ed.2d 948 (1973).

The question presented is a close one made especially so because the precise nature of the contemplated portions of the program under attack are unknown at this stage of the proceedings. However, the Court cannot here conclude that the state through the school board is so enmeshed in religious affairs as to warrant this Court's intervention.

"The history of man is inseparable from the history of religion." Justice Black in Engle v. Vitale, 370 U.S. 421, 434, 82 S.Ct. 1261, 1268, 8 L.Ed.2d 601 (1962). Hence religion and the state interact at many points. The permitted principle is one of neutrality between religion and the state. The principle is neither to inhibit or to encourage, but to permit one to choose his own course free of any compulsion from the state—this is the very essence of the Free Exercise Clause.

■■ Plaintiffs' Free Exercise argument must also, at this stage at least, fail. Coercion is an essential aspect of a Free Exercise claim. Here attendance at the ceremony and participation in the invocation itself are in one sense voluntary. While there are indirect pressures to attend, there are no substantial demands to partake. No audience recitation is involved and a student may think what he will concerning what is going on. The Court recognizes that some may be offended by what is said, but it is not convinced that the Constitution protects individuals from this type of offense. It cannot see how what is likely to be said in any way will inhibit the plaintiffs in the practice and pursuit of their religious beliefs.

While an acute fastidiousness might and indeed does give one pause, the Court is not convinced that the primary effect of the invocation will be either doctrinal dissemination or a manifestation of governmental affinity for religion. Such substance is rarely the result of high school graduation exercises.

## MEMORANDUM

## ON MOTION TO DISMISS

Plaintiffs, former high school students and their parents, brought this action seeking an injunction against alleged infringements of their religious freedom guaranteed by the First and Fourteenth Amendments to the Constitution of the United States. Jurisdiction is attained under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. The case is presently before the Court on defendants' motion to dismiss this action as moot due to the graduation of the student plaintiffs and for failure to state a claim upon which relief can be granted.

The immediate purpose of this action was to enjoin graduation ceremonies to be held at Douglas Freeman High School on June 10, 1974, at which a "benediction" and an "invocation" were sched-

uled. Plaintiffs alleged that such activities would constitute violations of the Establishment and Free Exercise Clauses of the First Amendment. Reference was also made in the complaint to a Baccalaureate service scheduled to be held as part of the graduation ceremony and to Bible reading at high school assemblies. The complaint sought a permanent injunction against defendants' permitting the recitation of prayers as part of any school exercise.

A preliminary injunction hearing was held on June 6, 1974. The focus of evidence at that hearing was the graduation invocation and the baccalaureate issue was not pursued. Evidence did come in during the hearing, however, concerning Bible reading at school auditorium assemblies.

On June 7, 1974, the Court issued an order and memorandum denying a preliminary injunction. On the evidence before it, the Court found that the invocation scheduled three days later would, if it occurred, be brief, transient and subsumed in the secular degree awarding ceremony. Neither the primary purpose nor the primary effect of the invocation in its graduation context was sufficiently shown to be the advancement or inhibition of religion to warrant the extraordinary remedy of injunctive relief at that time. The Court pointed out that while the wall between church and state must be strong, its strength is in sensitive and considered judicial oversight. Thus the wall's foundation, laid in human experience, is capable of flexibility and accommodation when confronted by those inevitable vagaries of human conduct which raise only a shadow of danger while remaining firm should palpable transgression appear in the offing.

On June 10, 1974, the graduation ceremony was held and the invocation and benediction given. All three of the student plaintiffs graduated on that day.

Defendants initially move to dismiss this case as moot on the grounds that the student plaintiffs, having graduated, are no longer subject to the acts of which they complained. Thus, defendants assert, the issues raised are no longer justiciable.

■■■ "Justiciability is . . . not a legal concept with a fixed content or susceptible of scientific verification. Its utilization is the resultant of many subtle pressures . . ." Poe v. Ullmann, 367 U.S. 497, 508, 81 S.Ct. 1752, 1759, 6 L.Ed.2d 989 (1961). However, two essential elements have been identified: the action must arise out of concrete events or circumstances rather than abstract or hypothetical questioning and it must be presented to the Court in an adversary context wherein each side's stake in the matter will insure the sharpened presentation of issues "upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). See, Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed. 2d 947 (1968).

Clearly the present case had both of these aspects when initiated. Were it to lose either, however, the loss would carry with it this Court's jurisdiction.

The policies of and conduct by defendants existing at the initiation of this action remain at this point unchanged. The allegedly unconstitutional practices of which plaintiffs complained, described by school officials as "traditional," will, from what the Court can gather, continue in the future. See Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed. 2d 1 (1969). Cf. United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Thus this case is distinguishable from cases in which the state has officially changed the practice challenged, Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969), or those in which the relief originally sought has, in the course of the litigation, been achieved by the plaintiff. See, DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

■ The question then becomes whether the plaintiffs remain proper persons to raise the claims engendered by these practices. In this regard, it is necessary to note the well-established doctrine that, when problems "capable of repetition, yet evading review" are raised by plaintiffs who having during the course of the litigation, primarily through simple passage of time, lost for one reason or another some of the objective adverseness which characterized their initial posture, the suits begun by such plaintiffs will not necessarily be defeated. Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The doctrine is designed to allow trial and appellate consideration of rights which as a practical matter would be otherwise unenforceable but which are of no lesser constitutional significance because their meaningful exercise has strict temporal limits. See Roe, supra.

This exception to normal justiciability standards extends no further than necessity requires. Thus if the wrong alleged, while capable of repetition against others, is not capable of repetition against the plaintiff himself and would not evade review if an action were brought by someone else, the doctrine would not apply. Defunis, supra. Cf. Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

■ To the extent the present case relates to graduation exercises, it is true that those graduating will never again be susceptible to the conduct of which they complained. However, there is no reason to believe that any future student would have a greater chance of availing himself of the full judicial process. The nine month school year during which a senior who would be attending graduation would have standing to raise the claim raised here, even assuming

the graduation program were pre-set with sufficient definiteness to satisfy the first prong of justiciability, is in its length and fixed termination analogous to the 266 day gestation period dealt with by the Court in Roe, supra.

To allow those in the position of the student plaintiffs here to continue to prosecute their claims is the only effective means to insure full and deliberate adjudication of the Establishment issues they raise. Cf. Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). They have become deeply embroiled in this action and if their claims are well founded, they have been injured in fact. Under these circumstances the Court finds that this case is not moot, that plaintiffs retain their standing to prosecute it, and that the issue remains justiciable. Dunn v. Blumstein, 405 U.S. 330, 333, n. 2, 92 S.Ct. 995, 31 L.Ed.2d 274.[1]

■ Defendants have also argued that, in light of the Court's previous memorandum, plaintiffs' action should be dismissed as failing to state a claim on which relief can be granted. Such a motion should not be granted unless it appears that plaintiffs are entitled "to no relief under any state of facts which could be proven in support of their claim." 2 A Moore's Federal Practice, ¶ 12.08, p. 2274.

■ The hearing on the motion for a preliminary injunction in this case was not consolidated with trial on the merits as it might have been under Rule 65(a)(2), Fed.Rules Civ.Proc., and plaintiffs therefore were required to put on only as much evidence as they felt would tilt the balance in their favor on this issue of interlocutory relief. The Court, considering the evidence so adduced, did not find an injunction in order at that time. Nonetheless, the issue was a close

---

1. It has been represented to the Court that Stewart Wolpert, a parent plaintiff in this action, has another child at Douglas Freeman High School in her sophomore year. With

regard to this plaintiff, the acts alleged are not only capable of repetition, but likely to be repeated, and the argument that the case is not moot as to him is even stronger.

one, and its adjudication was made more difficult by the fact that the exact content of the ceremony of immediate concern to the parties was unknown. The Court cannot say that further evidence, evidence which plaintiffs had reason to believe they would have an opportunity to present even should their motion for preliminary relief be denied, might not significantly affect its understanding of the issues raised.

In short, defendants' motion, if granted, would transpose what was explicitly a preliminary hearing into a final adjudication on the merits. This would cut against the spirit of Rule 65(a)(2) which contemplates that such an intention be made known to plaintiffs while they still may present further evidence. Furthermore, the motion is particularly inappropriate in a case such as this where resolution involves a delicate factual balance and the Court's initial ruling was deliberately tentative.

For the reasons stated above, defendants' motion to dismiss will be denied.

An appropriate order will issue.