Iver BOGEN, Patsy Reed High, Rudolf
Johnson, and Danna R.
Friedman, Plaintiffs,

v.

Gary DOTY, Deidre Dodge, William V.
Kron, A. Lloyd Shannon, Edwin H. Hoff,
Ronald R. Dicklich, Alvin S. Hall, com-
prising the County Board of the County
of St. Louis, Minnesota, Defendants.

No. Civ. 5–77–96.

United States District Court,
D. Minnesota,
Fifth Division.

Sept. 8, 1978.

Newton S. Friedman, Duluth, Minn., for
plaintiffs.

Keith M. Brownell, St. Louis County
Atty., Michael R. Dean, Asst. County Atty.,
Duluth, Minn., for defendants.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

The issue here is whether the practice of
having a prayer by a local unpaid clergy-
man preceding St. Louis County Board
meetings violates the First Amendment
prohibition against the making of laws re-
specting the establishment of religion.

Plaintiffs, citizens and taxpayers of St.
Louis County, claim it does and seek to
enjoin the practice. Defendant county
commissioners defend the practice as consti-
tutionally permissible. The facts have been
stipulated and each party moves for sum-
mary judgment. Briefs have been filed and
arguments heard.

There is no specific guidance on the ques-
tion either in the Constitution or in previ-
ously decided cases. The United States Su-
preme Court's school prayer decisions of the
1960's [1] are not exactly in point because
they deal with state laws, or rules promul-

---

1. *Engel v. Vitale*, 370 U.S. 421, 82 S.Ct. 1261, 8
L.Ed.2d 601 (1962); *Abington School District v.*
*Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10
L.Ed.2d 844 (1963).

gated under authority of law, providing for compulsory prayers or bible reading in schools.

Those decisions dealt with mandatory prayer or bible reading for minors in school settings and requiring expenditures of public funds. In the present case no law or regulation requires the prayer; presence during its recitation is voluntary; no expenditure of public funds is required; and adults, not school children, are involved.

Absent specific precedential decisions, we turn to history and custom.

It may be recalled that the inclusion of the establishment clause in the Constitution was occasioned in large measure by opposition to the established church in England and compulsory subscription to its Book of Common Prayer. Many of the early colonists had emigrated to America for just that reason. Established churches also existed in many of the colonies. *Engel v. Vitale,* 370 U.S. 421, 428, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962). James Madison, Thomas Jefferson, and others, were leaders in opposition to government related churches and their views undoubtedly led to the inclusion of the establishment clause in the Bill of Rights. *School District of Abington v. Schempp,* 374 U.S. 203, 215, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963).

The United States Supreme Court, in interpreting the religion clauses of the First Amendment in the light of its history and purpose, has found compulsory prayer, Bible reading, and religious training in public schools to violate the Religion Clause, *Engel v. Vitale, supra, Abington School District v. Schempp, supra, McCollum v. Board of Education,* 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948), and has declared various forms of financial aid to parochial schools to be unconstitutional. *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), *Committee for Public Education v. Nyquist,* 413 U.S. 756, 93 S.Ct. 2955, 37

L.Ed.2d 948 (1973), but neither the Supreme Court nor any other federal court has found voluntary uncompensated invocations preceding meetings of public bodies to impinge upon First Amendment religious rights.[2] Indeed, the Supreme Court in dicta has recognized that "[p]rayers in our legislative halls" are a proper activity not violative of the Constitution. *Zorach v. Clauson,* 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952). Long-time custom and practice in the United States militates against subscription to plaintiffs' narrow view of the Religion Clause.

It must be remembered that "[we] are a religious people whose institutions presuppose a Supreme Being," *Zorach v. Clauson,* 343 U.S. 306, 313, 72 S.Ct. 679, 684, 96 L.Ed. 954 (1952) and that the First Amendment "does not say that in every and all respects there shall be a separation of Church and State," *Zorach v. Clauson, supra,* at 312, 72 S.Ct. at 683. Mr. Justice Douglas said in *Zorach,* p. 312, 72 S.Ct. p. 683, the First Amendment "studiously defines the manner, the specific ways, in which there shall be no concert or union or dependency one on the other." To say that a voluntary invocation preceding a county board meetings is one of those ways defies the longtime view of that amendment, and practices under it, by Executive, Legislative and Judicial officers of the national and state governments. Mr. Justice Clark reviews these practices in *School District of Abington v. Schempp, supra,* 374 U.S. at 212, 83 S.Ct. 1560. The most notable, and analogous, one is that of the U. S. House of Representatives and the U. S. Senate beginning sessions each day with an invocation by a compensated chaplin—a practice followed since the beginning of the republic. Most state legislatures follow a similar prayer practice—Minnesota does. Federal courts are customarily opened with an invocation to "God to save this honorable court" and presidents and governors implore His

---

2. Federal courts have upheld the practice of invocation ceremonies in high school graduation ceremonies. *See, Wood v. Mount Lebanon Township School Dist.,* 342 F.Supp. 1293 (D.C. 1968); *Grossberg v. Deusebio,* 380 F.Supp. 285 (D.C.1974); *see also, Lincoln v. Page,* 109 N.H. 30, 241 A.2d 799 (1968); *Wiest v. Mount Lebanon School District,* 457 Pa. 166, 320 A.2d 362 (1974).

guidance when taking the Oath of Office. When new U. S. citizens are sworn in each month in this court, they join in the pledge of Allegiance to the U. S. Flag which recognizes "One Nation, under God."

In this country, we do not permit entanglements between government and church, but this does not mean that we do not permit recognition of a Supreme Being and invocation of his guidance. We are not a religiously sterile people. There is a limit to the so-called "Wall of Separation between church and state" and in fixing that limit, we must, as Mr. Justice Goldberg said in *Abington School District v. Schempp,* *supra,* 374 U.S. at 308, 83 S.Ct. at 1616, "distinguish between real threat and mere shadow."

There is no threat to the First Amendment prohibition against the making of laws respecting an establishment of religion in the invocation practice of the St. Louis County Commissioners. Plaintiffs allege irreparable injury and seek an injunction against continuation of the practice. The court finds no injury. The invocation will do no harm and it may do some good. I am satisfied the practice does not violate the Constitution.

The Clerk is directed to enter summary judgment for defendants.