**Robert GRAHAM and Rebecca Graham, Plaintiffs,**

v.

**CENTRAL COMMUNITY SCHOOL DISTRICT OF DECATUR COUNTY, Defendant.**

**Civ. No. 85–335–B.**

United States District Court,
S.D. Iowa, C.D.

May 9, 1985.

Mark W. Bennett, Staff Counsel, Iowa Civil Liberties Union, Des Moines, Iowa, for plaintiffs.

*United States v. Archer*, 486 F.2d 670 (2d Cir. 1973), has been considered by this Court and has been found to be misplaced.

Charles L. Elson, Elson & Fulton, Iowa, for defendant.

## MEMORANDUM OPINION, DECLARATORY JUDGMENT AND INJUNCTION

VIETOR, Chief Judge.

This is a civil rights action under 42 U.S.C. § 1983, challenging the constitutionality of including an invocation and benediction at high school graduation ceremonies conducted by the defendant. Plaintiffs seek a declaratory judgment that including an invocation and benediction at the ceremonies violates the Establishment Clause of the First Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment, and they seek preliminary and permanent injunctive relief. Jurisdiction is predicated upon 28 U.S.C. § 1343(3).

Plaintiffs' amended and substituted application for preliminary injunction came on for hearing on May 8, 1985. Pursuant to Fed.R.Civ.P. 65(a)(2), and with consent of the parties, the court ordered the trial of the action on the merits to be advanced and consolidated with the preliminary injunction application hearing. Evidence of the parties was then received.

Defendant's answer has been filed, thorough briefs have been submitted, and the court is prepared to proceed to its final decision; therefore, the application for a *preliminary* injunction need not be, and is not, acted upon.

## FINDINGS OF FACT

Plaintiff Robert Graham is a resident of Leon, Iowa, and is the father of plaintiff Rebecca Graham, who is a graduating senior at Central Decatur High School, the only public high school in the defendant school district. Plaintiffs plan to attend the graduation ceremony of Rebecca Graham's high school class, which is scheduled for this coming Sunday, May 12, 1985, in the high school gymnasium.

Defendant Central Community School District of Decatur County is a duly constituted body politic as a school corporation, with powers and jurisdiction pursuant to Iowa Code § 274.1 (1985). The school district has a population of about 4,000 people, about 2,000 of whom live in Leon, the county seat. There are about 750 students enrolled in the district's schools, 49 of whom are graduating seniors.

For at least the past twenty years, and probably for much longer, the defendant's graduation ceremonies (sometimes hereinafter referred to as "commencement exercises") have been opened with an invocation prayer by a Christian minister and closed by a Christian minister's benediction. The minister is not paid for this service. Up until last year, the defendant also conducted a baccalaureate ceremony.

In early 1984 plaintiff Robert Graham appeared before the defendant's board of directors at a hearing the board held on his objections to what he viewed as religious content of the proposed 1984 graduation ceremonies. At a subsequent meeting of defendant's board a decision was made to cease conducting the baccalaureate ceremony and to grant the Community Ministerial Alliance's request that the Ministerial Alliance conduct a separate, voluntary baccalaureate service. The board also made a decision not to change the practice of having an invocation and benediction conducted by a minister at the commencement ceremonies, and the practice was followed at the 1984 commencement exercises. The commencement exercises scheduled for this coming Sunday also include an invocation and a benediction.

In 1984 the Iowa Civil Liberties Union wrote to the defendant's board about the invocation and benediction at commencement exercises, and on March 5, 1985 the Iowa Civil Liberties Union demanded that defendant abandon that practice. Defendant rejected the demand.

Attendance at the graduation ceremony is and always has been voluntary. Attendance by a graduating senior is not required to receive a diploma.

The defendant's board makes the decision whether to have an invocation and

benediction. The board calls upon the Community Ministerial Alliance to provide a minister to conduct the invocation and benediction, and the president of the Community Ministerial Alliance selects the minister each year. The practice is to pass the assignment around among the ministers.

The minister who conducts the invocation and benediction has complete control of what he will say. Nobody tells him what the content of the invocation and benediction shall be; that is entirely up to the minister, who acts in accordance with his conscience. The content has always been a Christian prayer or communication.

The invocation is usually no more than two or three minutes long, and the benediction is usually less than a minute. The entire commencement exercise lasts from 60 to 90 minutes.

The minister selected to conduct the invocation and benediction this year is Reverend Richard Speight, Jr. He is an ordained United Methodist minister serving as pastor in the Loving Chapel United Methodist Church in Leon and as pastor of a country church, High Point United Methodist Church. Reverend Speight plans to say, just before the invocation, "Will those who wish to pray with me join me." He does not plan to ask the people present to stand. He plans to make a similar statement just before the benediction if the benediction, like the invocation, is in prayer form, but he will not do so if he chooses a "charge or dismissal with blessing" form of benediction, which he does not view as a prayer. The latter form of benediction, however, is viewed by Reverend Speight as a religious communication, probably involving a reading of some scripture from the Holy Bible. Reverend Speight has not yet decided which form of benediction to use.

The defendant school district includes invocations and benedictions by Christian ministers in other public school functions, such as sports banquets (there are three a year) and the prom. Sometimes the minister calls upon the people present to stand during the invocation.

In 1977, in at least one classroom, the teacher conducted a Christian prayer before the students were permitted to leave for lunch. Plaintiff Robert Graham and his wife, Sharon Graham, complained about that and the practice stopped. Not long after that, the Grahams learned that Gideon Bibles were distributed to students in the defendant's classrooms.

In 1984, at the conclusion of the board meeting at which the decision was made to have the Community Ministerial Alliance conduct the baccalaureate ceremony but to retain an invocation and a benediction as part of the commencement exercises, the president of the school board remarked in the presence of Mrs. Graham and all others present that she hoped that the Graham children could be exposed to Christianity in school.

Reverend Speight considers the purpose of the invocation and benediction that he plans to give at the commencement exercises this coming Sunday to be solely religious. To his understanding they will serve no other purpose. He believes that the participants in the invocation and benediction will be himself, those who accept his invitation to join him, and God. Reverend Speight believes that the invocation and benediction at the commencement exercises serve traditional values of a community founded on Judeo-Christian tradition in which the graduating seniors grew up, and that the practice is "in the tradition of the One who is my Lord and Savior, Jesus Christ."

Three expert witnesses testified, all of whom were called by plaintiffs. One is a United Methodist clergyman, one is an ordained minister of the Christian Church (Disciples of Christ), who serves as a professor of religion at Drake University, and the other is an ordained Unitarian Universalist minister. All three of them opined that invocations and benedictions at commencement exercises serve a religious purpose, not a secular purpose, and all three opined that a public school offering an invocation and benediction at public events, such as commencement exercises, is advo-

cating religion. The Unitarian Universalist minister testified that he is not a Christian and is personally offended by the offering of Christian prayers at a public school function. He opined that any non-Christian, whether a member of another faith or a person without any faith, could be similarly offended.

Plaintiff Robert Graham testified that he is a Unitarian Universalist and that he is personally offended by the offering of Christian prayers at public school functions, including commencement exercises. He testified that it makes him feel separated and ostracized. He views the practice as promotion of religion by the school. Plaintiff Rebecca Graham feels the same as her father about the offering of Christian prayer at public school functions. Sharon Graham also finds the practice personally offensive.

The only two witnesses who testified for the defendant are Virginia Webb, a member of defendant's board of directors, and Thomas Spear, the defendant's new superintendent. Mrs. Webb has been a member of the board for 11 years, and served as vice president for several years, and served as president from 1982–1984. She tendered no opinion as to the purpose of the invocation and benediction at commencement exercises. She testified that so far as she knows the school has always done it. Superintendent Spear has attended many commencement exercises in many public schools during his career in education, and he testified that each one began with an invocation and ended with a benediction. He opined that the first purpose of having an invocation and benediction in the commencement exercises is "tradition." He also testified that he believes that it lends to the ceremony a "serious note." Superintendent Spear also testified that in his opinion the invocation and benediction also serve a religious purpose. He testified that he does many things in school requiring a "serious note" and that he does them without an invocation in advance. He testified that commencement exercises could be started off on a "serious note" by some means other than prayer, but that an invo-

cational prayer is the only means with which he is familiar and that he has not specifically thought about any other means.

A petition has circulated in the defendant school district signed by about 700 persons expressing support for the inclusion of an invocation and benediction in commencement exercises. Mrs. Webb testified that she knew of nobody who is supportive of plaintiffs' position, but Superintendent Spear testified that he has heard some people express agreement with plaintiffs.

## CONCLUSIONS OF LAW

### (Including Some Ultimate Fact Findings)

The First Amendment to the Constitution of the United States provides, *inter alia:* "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." This provision is framed as a limitation on the authority of the federal government, but it is applicable to the states through the Fourteenth Amendment. *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (Establishment Clause); *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) (Free Exercise Clause).

Only the Establishment Clause is invoked by plaintiffs in this case.

Our forefathers who wrote and adopted the First Amendment shared "a widespread awareness among many Americans of the dangers of a union of Church and State." *Engel v. Vitale,* 370 U.S. 421, 429, 82 S.Ct. 1261, 1266, 8 L.Ed.2d 601 (1962). They knew that a government-sponsored religion elicits "the hatred, disrespect and even contempt of those who [hold] contrary beliefs." *Id.* at 431, 82 S.Ct. at 1267. Chief Justice Burger, in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), expressed the establishment prohibition concept well:

> Under our system the choice has been made that government is to be entirely excluded from the area of religious instruction and churches excluded from the

affairs of the government. The Constitution decrees that religion must be a private matter for the individual, the family, and the institutions of private choice. . . .

*Id.* at 625, 91 S.Ct. at 2117.

However, the Supreme Court has not held that the Establishment Clause requires " . . . total separation between church and state; total separation is not possible in an absolute sense. Some relationship between government and religious organizations is inevitable." *Id.* at 614, 91 S.Ct. at 2112.

In 1971, in the *Lemon* case, the Supreme Court announced the now familiar three-part test for determining whether a challenged governmental practice is permissible under the establishment clause of the First Amendment: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . .; finally, the statute must not foster 'an excessive government entanglement with religion.' " *Id.* at 612–13, 91 S.Ct. at 2111 (citations omitted). If the governmental action under challenge "violates any of these three principles, it must be struck down under the Establishment Clause." *Stone v. Graham,* 449 U.S. 39, 40–41, 101 S.Ct. 192, 193–94, 66 L.Ed.2d 199 (1980).

The *Lemon* three-part test was not applied in the recent legislature prayer case, *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983). However, it was applied in the later nativity scene case, *Lynch v. Donnelly,* —— U.S. ——, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) and it has been applied by most courts in cases involving Establishment Clause challenges to school activities. The *Marsh* decision is a singular Establishment Clause decision that rests on the "unique history" of legislative prayer, and the holding of that case is clearly limited to the legislative setting. Any doubts about the limited application of *Marsh* and the continued viability of the *Lemon* three-part test were laid to rest by the Court's post-Marsh application of the *Lemon* three-part test in *Lynch.* This court is abundant-

ly satisfied that it must measure the facts of this case by the *Lemon* three-part test.

School prayer cases are not new. Among the Supreme Court decisions leading to the articulation of the three-part test in *Lemon* are *School District v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) and *Engel.* In *Schempp* the Court held that no state law or school board may require that passages from the Bible be read or that the Lord's Prayer be recited in public schools at the beginning of each school day, even if individual students could be excused from attending or participating. In *Engel* the Court held that state officials may not compose an official state prayer and require that it be recited in public schools at the beginning of each school day even if the prayer is denominationally neutral and pupils so desiring could remain silent or be excused while the prayer was recited.

Application of the *Lemon* three-part test in *Stone* resulted in the Supreme Court holding that a state statute that required the posting of the Ten Commandments, purchased with private contributions, on the wall of each public classroom in the state, violated the First Amendment Establishment Clause because it did not serve a secular purpose.

Applying the first part of the *Lemon* three-part test to the thoroughly developed evidentiary facts in this case, the court finds as an ultimate fact, and concludes, that the invocation and benediction portions of defendant's commencement exercises serve a Christian religious purpose, not a secular purpose. This finding and conclusion is supported not only by the great weight of the evidence in this case, but by the undeniable truth that prayer is inherently religious. As the United States Court of Appeals for the Fifth Circuit recently noted:

Prayer is perhaps the quintessential religious practice for many of the world's faiths, and it plays a significant role in the devotional lives of most religious people. . . .

. . . .

... Prayer is an address of entreaty, supplication, praise, or thanksgiving directed to some sacred or divine spirit, being, or object. That it may contemplate some wholly secular objective cannot alter the inherently religious character of the exercise.

*Karen B. v. Treen,* 653 F.2d 897, 901 (5th Cir.1981), *aff'd,* 455 U.S. 913, 102 S.Ct. 1267, 71 L.Ed.2d 455 (1982).

Applying the second part of the *Lemon* three-part test to the evidentiary facts in this case, the court finds as an ultimate fact, and concludes, that the invocation and benediction portions of defendant's commencement exercises have as their primary effect the advancement of the Christian religion. This finding and conclusion is supported by the great weight of the evidence in this case. As the United States Court of Appeals for the Fourth Circuit noted in barring a state from printing a "Motorist's Prayer" on state maps:

> By printing a prayer on the official map, the state is placing its power and support behind a particular form of theological belief, and state sponsorship of religious belief is one of the primary encroachments the [establishment] clause seeks to inhibit....
>
> ....
>
> ... A prayer, because it is religious, does advance religion, and the limited nature of the encroachment does not free the state from the limitations of the Establishment Clause....
>
> ... By placing its imprimatur on the particular kind of belief embodied in any prayer, the state necessarily offends the sensibilities not only of nonbelievers but of devout believers among the citizenry who regard prayer "as a necessarily private experience," *Abington School District v. Schempp,* 374 U.S. at 283–85, 83 S.Ct. at 1603–1604 (Brennan, J., concurring).

*Hall v. Bradshaw,* 630 F.2d 1018, 1020–21 (4th Cir.1980), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1480, 67 L.Ed.2d 613 (1981).

The third part of the *Lemon* three-part test, the question of excessive government entanglement with religion, need not be examined because it is not raised by plaintiffs and the court's resolution of the other two parts of the test is dispositive of this case.

Defendant relies on the *Lynch* decision, *Bogen v. Doty,* 598 F.2d 1110 (8th Cir. 1979), a Pennsylvania Supreme Court decision and some federal district court decisions.

*Lynch* is clearly distinguishable on its facts. *Lynch* did not involve any religious exercise like prayer at a public government function. It involved the inclusion of a nativity scene in a large Christmas-time display of figures and decorations associated with the Christmas holiday. The court applied the *Lemon* three-part test and found that all three parts of the test were satisfied.

*Bogen* involved a resolution of a county board calling for an opening invocation at its public meetings. It is a type of legislative prayer case. The court found that the purpose and effect of the invocation was to establish a solemn atmosphere and serious tone for the board meetings. Those findings rested on a very scanty stipulation of facts, and the case must be viewed in its slim factual context. The case does not stand for the broad proposition that any governmental public function or ceremony may constitutionally be opened with a religious invocation. In fact, the court warned of the "quagmire" the county was near. 598 F.2d at 1114.

In *Wiest v. Mt. Lebanon School District,* 457 Pa. 166, 320 A.2d 362 (1974), the court held that invocations and benedictions at a public high school commencement did not violate the Establishment Clause. Similar results were reached in *Grossberg v. Deusebio,* 380 F.Supp. 285 (E.D.Va.1974) and *Wood v. Mt. Lebanon Township School District,* 342 F.Supp. 1293 (W.D.Pa. 1972). In each of these cases, *under the facts presented to the court,* the court found that the primary purpose of the invocation and benediction was secular and that the effect was not to advance religion. An examination of these cases shows that the

facts were not very thoroughly developed. In *Grossberg,* the judge noted that the "question presented is a close one" 380 F.Supp. at 290. In my opinion, the courts in the two Pennsylvania cases placed undue emphasis on the fact that attendance at the commencement exercises was voluntary. *See Schempp; Engel.*

In *Doe v. Aldine Independent School District,* 563 F.Supp. 883 (S.D.Tex.1982) the court held that recitation of a prayer at athletic contests, pep rallies and graduation ceremonies was not secular and tended to advance religion and therefore violated the Establishment Clause. Similar holdings in respect to graduation ceremonies have been reached by two state trial courts in unpublished opinions brought to the attention of this court and counsel for defendant by counsel for plaintiffs. They are *Kay v. David Douglas School District No. 40,* No. A8404–02438, Circuit Court for the State of Oregon for the County of Multnomah, judgment entered June 28, 1984, and *Bennett v. Livermore Valley Unified School District,* No. H–91312–6, Superior Court of the State of California in and for the County of Alameda, memorandum of decision, May 17, 1984.

The decision reached by this court in this case is, of course, predicated on the evidence developed at the hearing on May 8, 1985 and on an application of the *Lemon* three-part test to that evidence.

■ Defendant suggests that if this court grants plaintiffs injunctive relief, the rights of others to freely exercise their religion will be infringed. That is not so. The First Amendment right of the people to the free exercise of religion does not give them a right to have government provide them public prayer at government functions and ceremonies, even if the majority would like it. Their free exercise right is not infringed by enforcement of the Establishment Clause, just as enforcement of their rights under the Free Exercise Clause would not violate the Establishment Clause. The two clauses are not mutually antagonistic.

It may well be that the majority of graduating seniors and the majority of the population in the defendant school district would like to have an invocation and benediction as part of the commencement exercises. However, the enforcement of constitutional rights is not subject to the pleasure of the majority. It would be the antithesis of the concept of constitutional law to apply the protection of the Constitution, which is the fundamental law of our land, in any given situation only if the majority at the relevant time and place approved. The Constitution protects all of us, including those who are in the minority. Indeed, First Amendment rights (religion, speech, press, peaceable assembly and petitioning for redress of grievances) would be meaningless if they were not available to minorities, the unpopular, and those courageous enough to speak out against the prevailing views of the majority and those entrusted with governmental power.

## DECLARATORY JUDGMENT AND INJUNCTION

■ It is the declaratory judgment of the court that the defendant's inclusion of a religious invocation and a religious benediction as part of its graduating ceremonies violates the Establishment Clause of the First Amendment of the United States Constitution. It is the further judgment of the court that the defendant is hereby enjoined from including in its graduating ceremonies scheduled for Sunday, May 12, 1985, and subsequent graduating ceremonies, any religious invocation or religious benediction.