**AMERICAN CIVIL LIBERTIES UNION, Oakland County Branch, Micki Levin, and Paul J. Fealk, Plaintiffs,**

v.

**CITY OF BIRMINGHAM, and City of Oak Park, Defendants.**

**Civ. A. No. 83CV3348DT.**

United States District Court, E.D. Michigan, S.D.

July 23, 1984.

**1338**

James Schuster, Robert A. Sedler, Detroit, Mich., for plaintiffs.

Jon H. Kingsepp, Bloomfield Hills, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

This is a civil action, brought pursuant to 42 U.S.C. § 1983 (1981), by which the plaintiff, a resident of the defendant City of Birmingham, challenges as violative of the first amendment of the United States Constitution, the placement and maintenance of a nativity scene by the defendant herein on the lawn of Birmingham City Hall during the Christmas season. There being no dispute as to any of the material facts, this matter is properly before the court on the parties' cross motions for summary judgment. This court has jurisdiction of the instant cause under the provisions of 28 U.S.C. § 1331 (1983). Upon review of the submitted briefs of counsel after oral argument to the bench and based upon the following findings of fact and conclusions of law, this court must find in favor of plaintiff and enter a permanent injunction prohibiting the defendant from erecting, supporting, or maintaining a nativity scene on the lawn of Birmingham City Hall.

## FINDINGS OF FACT

It is alleged by the plaintiff and admitted by the defendant, and thus this court finds that:

1. Annually, during the Christmas season, from approximately late November through early January of the following year, the City of Birmingham displays a nativity scene on the lawn of the Birmingham City Hall. The nativity scene is comprised of figurines depicting the Christ Child, the Mother Mary, Joseph, three costumed shepherds, and several lambs. Absolutely nothing else is included in the display.

2. In all matters herein, the defendant city was acting as a governmental unit under color of state law, custom or usage, by and through its functionaries, employees, agents or elected officials.

3. The nativity scene was displayed on public property in front of Birmingham City Hall, a place open to the general public. When not displayed on public property, it was stored on public property. The figures in the nativity scene were built at public expense, and the electricity used in connection with the display was furnished out of public funds. The nativity scene was cleaned, restored, repaired and maintained at public expense, and was dismantled and conveyed to storage by public employees at public expense.

## CONCLUSIONS OF LAW

A careful analysis of the Supreme Court's recent holding in *Lynch v. Donnelly,* —— U.S. ——, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), leads the court to conclude that sponsorship and maintenance of the nativity scene by the defendant on the lawn of its city hall indeed violates the Establishment Clause of the First Amendment of the United States Constitution. In *Lynch,* the Supreme Court held that the inclusion of a nativity scene in an extensive Christmas holiday display sponsored by the city of Pawtucket, Rhode Island did not violate the Establishment Clause, in that the participation of the nativity scene in the display was related to the advancement of a secular purpose and thus, did not impermissibly involve the city government in the endorsement of religion.

The Pawtucket display was situated in a park owned by a non-profit organization and was located in the heart of the Pawtucket shopping district. It consisted of many of the figures and decorations traditionally associated with the winter holiday season, including a Santa Clause house,

reindeer pulling Santa's sleigh, candy-striped poles, a Christmas tree, carolers, cutout figures representing a clown, an elephant, and a teddy bear, a "SEASONS GREETINGS" banner and hundreds of lights, as well as the nativity scene. The court in *Lynch* determined that the display was sponsored by the city of Pawtucket in order to celebrate the holiday season and to depict the origins of that holiday, and that there were legitimate secular purposes for the display. There being secular purposes for the display, the court found that there was no attempt by the defendant city to express any kind of subtle government advocacy of a particular religious message.

■ Although the *Lynch* opinion is replete with references to the significant role that religion has played in the development of our nation, it does not, either on its face or in any implicit proclamation, hold that a nativity scene standing alone, or that any other single religious symbol or group of such symbols erected on public property with public funds, complies with the requirements of the separation of church and state required by our Constitution. With few exceptions, the Supreme Court decisions on this issue have demanded that a governmental practice challenged under the Establishment Clause of the First Amendment satisfy the following criteria:

> First, the practice must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, it must not foster an excessive government entanglement with religion.

*Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

Under the three-pronged *Lemon* test, plaintiff here must prevail. First, there is nothing in the defendant's pleadings or arguments, or in the entire record here, to support a finding of a secular purpose for the display of the nativity scene, alone, on municipal property. This factual scenario is quite distinct from that described in *Lynch*, although the defendant would have the court discover an implied presumption in favor of the "secularization" of the na-

tivity scene, such that the religious symbolism apparent in the case at bar should be somehow overshadowed, balanced or neutralized by the aura of Christmas shopping and holiday cheer. This court cannot so find. The nativity scene here stood alone, on public property, maintained by public monies, for all, the Christians, the Jews, the Muslims, the atheists, all citizens of Birmingham, to view as a municipal endorsement. There were no red and green banners, candy canes, or little toy soldiers about. In short, there was nothing to offset the purely religious cast of the display.

Second, it is clear to the court that the primary effect of the display of the nativity scene by the defendant in the case at bar must be to advance, affirm, approve and otherwise validate the Christian religion, in that implicit government support of the religion represented by the sacred figures must be presumed by onlookers. This is the very consequence against which the Establishment Clause is intended, and the defendant may not strain the *Lynch* decision beyond its narrow parameters. The defendant's contention that the plaintiff must plead and prove that there is no secular purpose for the challenged display is not supported by either the *Lynch* or *Lemon* decisions. Plaintiff has challenged, as a taxpayer of the defendant city, the expenditure of public monies in violation of the Establishment Clause. The defendant has failed to come forward with any evidence by deposition, affidavit or argument which establishes any secular purpose whatsoever for this annual religious display.

Third, while it is not necessarily an "excessive government entanglement with religion" to engage in such activity as the defendant has here (the entanglement prong of the *Lemon* test being traditionally limited to institutional entanglement), it appears to the court that the solely religious character of the display in question is such that it might cause political divisiveness, another evil addressed and forbidden by the Establishment Clause. The display conveys the restrictive message that Chris-

tianity is the chosen religion of the City of Birmingham.

In *McCreary v. Stone*, 716 F.2d 739 (2d Cir.1984), the Second Circuit reversed a eral district court's holding that the defendant Village of Scarsdale was correct in denying plaintiff's applications to display a creche in a public park during the Christmas holiday season. The district court's decision was *McCreary v. Stone*, 575 F.Supp. 1112 (S.D.N.Y.1983), rendered prior to the Supreme Court's handing down the *Lynch* decision. The Second Circuit, citing *Lynch* and *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), held that the village's refusal to grant permission to private groups to erect a creche in Boniface Circle, a village-owned park located in the center of the business district of Scarsdale, for approximately two weeks during the Christmas holiday season, was constitutionally infirm. The appellate court noted the factual background in *Lynch* and *Widmar*.

In *Widmar*, eleven students of the University of Missouri at Kansas City brought suit to challenge a university regulation that prohibited their religious group from using university facilities for meetings, as other student groups did. The Supreme Court held that "the Constitution forbids a State to enforce certain exclusions from a forum generally open to the public, even if it was not required to create the forum in the first place." 454 U.S. at 267–68, 102 S.Ct. at 272–73. The court essentially found in *Widmar* that the provision of an open forum by the University, in which religious as well as non-religious discussions could take place, would not constitute any governmental endorsement of religious sects or practices.

The Second Circuit, then, relying upon the new *Lynch* decision as well as its "equal access/opportunity to public facilities" reading of the *Widmar* opinion, found that the creche could be displayed in Boniface Circle without doing violence to the fundamental separation between church and state upon which our nation is founded. The court found that the village's conten-

tion-based denial of the applications of the plaintiffs to erect a creche on public property could not pass muster, in that the village was not asked to become involved in any way with the actual erection and maintenance of the display, and the creche would be accompanied by a sign which affirmatively disclaimed any support or endorsement on the part of the village. The court noted that Boniface Circle, the proposed site for the creche display had been the recent site of the Christmas Carol Sing and numerous Christmas, presumably secular, decorations. In discounting the village's argument that a creche standing alone was substantially different from a creche in the midst of many more secular items, as in *Lynch*, the court stated that the proper context for analysis was the entire Christmas holiday season, and that the *Lynch* court had made it clear that even without the surrounding traditional Christmas paraphernalia, the creche, considered within the proper context, could evince a secular purpose as a part of the larger Christmas theme.

This court cannot discover the clarity in the *Lynch* decision upon which the *McCreary* court expounds. The close decision in *Lynch* included a lengthy discussion which noted specifically the secular details of the display which it found to be constitutionally acceptable. Further, in the case at bar, the entire display was only to be found on public property, having been erected, maintained, illuminated and stored by public employees in public facilities. There were no disclaimer signs involved on the lawn of the Birmingham City Hall. There were no stores for shoppers to be lured into and no Santa Clauses or trees. The defendant's nativity scene, unlike those in *Lynch* and *McCreary*, was entirely city-sponsored and was to remain in full public view much longer than the two weeks requested by plaintiffs in *McCreary*.

This court, then, must find in favor of the plaintiffs and grant their motion for summary judgment. A permanent injunction will issue against the involvement of the defendant City of Birmingham in using

public funds to erect, maintain or store the religious display which is the center of this dispute.

IT IS SO ORDERED.