Duane **LUNDBERG, Eric Lundberg, Orville Ives, and Bernadette Ives, Plaintiffs,**

v.

**WEST MONONA COMMUNITY SCHOOL DISTRICT, Defendant.**

**No. C 89–4039.**

United States District Court, N.D. Iowa, W.D.

Summary Order May 18, 1989.

Memorandum and Order May 19, 1989.

Ray Sullins, Des Moines, Iowa, for plaintiffs.

Mark W. Bennett, Des Moines, Iowa, for defendant.

## SUMMARY ORDER

DONALD E. O'BRIEN, Chief Judge.

This matter is before the court pursuant to plaintiffs' resisted motion for preliminary injunction. Acknowledging the need for a speedy decision, the court hereby releases the holding of its decision in this brief order, a more complete Memorandum to support this order to follow.[1]

The court initially notes that a controversial case, such as the one it must now decide, will obviously upset one party and that party's supporters. The court does not reach this decision with ease nor with any sense of satisfaction as to the result. Nonetheless, ours is a system of laws, calling upon this court to follow previous directions of the Supreme Court and the Eighth Circuit Court of Appeals.

IT IS HEREBY ORDERED that plaintiffs' motion for a preliminary injunction is denied on the following grounds: Plaintiffs have failed to establish that a public high school graduation ceremony is a public forum which would permit a parent or a student to force the School Board to allow a prayer to satisfy the rights of that parent or student under the first amendment freedom-of-speech clause; further, plaintiffs have failed to demonstrate that *public* prayer at a high school graduation ceremony forms a basic tenent of their religious beliefs which, if it had been proved, might well compel a different result. Having so held, the court need not go further to consider establishment-of-religion clause concerns. Nevertheless, recognizing that a higher court may disagree with this court's legal conclusions, the court has decided that, even if plaintiffs could have demonstrated a violation of their first amendment right to free speech and free exercise of religion, an invocation and benediction at a public high school graduation ceremony violates the establishment-of-religion clause of the first amendment: prayer will serve a primarily religious purpose in this case and will have the primary effect of advancing religion. Having assumed in the alternative, for the sake of this analysis, that defendant's ban on prayer has violated the plaintiffs' first amendment rights of free speech and free exercise of religion, and having ruled that prayer at this high school graduation ceremony violates the establishment of religion clause, the court must weigh the conflicting clauses and has found that the weight comes down on the side of preventing a violation of the establishment of religion clause, as opposed to preventing the violation of these individual plaintiffs' free speech and free exercise of religion

---

1. The court has also taken into account the widespread interest in this case and provides this early summary of its decision as an accommodation to interested parties.

rights. Finally, the court has concluded that plaintiffs have not met their burden of proof necessary for purposes of justifying a preliminary injunction.

IT IS SO ORDERED.

A Memorandum in support of this order will follow.

## MEMORANDUM AND ORDER [1]

This matter is before the court pursuant to plaintiffs' resisted motion for a preliminary injunction, through which plaintiffs seek to force (enjoin) the West Monona Community School District School Board to allow Reverend Lundberg to be on the program and say prayers in the form of an invocation and benediction, at the high school graduation ceremonies on May 21, 1989. Plaintiffs brought this suit pursuant to Title 42 of the United States Code, section 1983, claiming a violation of their civil rights. Title 28 of the United States Code, section 1343(3), vests jurisdiction in this court to consider plaintiffs' claims. This matter came before the court on an expedited basis, the court holding a hearing on this matter on May 12, 1989 in Council Bluffs, Iowa. The court has devoted special attention to this important case, carefully reviewing all the case law, pleadings, briefs, and arguments.

The court initially notes that a controversial case, such as the one it must now decide, will obviously upset one party and that party's supporters. The court does not reach this decision with ease nor with any sense of satisfaction as to the result. Nonetheless, ours is a system of laws, calling upon this court to follow previous directions of the Supreme Court and the Eighth Circuit Court of Appeals.

The court hereby issues its considered judgment that plaintiffs are not entitled to a preliminary injunction on the grounds that they have not established a violation of their first amendment right to free speech or to free exercise of their religion, and in the alternative, that requiring prayer at a high school graduation ceremony would violate the establishment clause of the first amendment.

## I. FACTS

The facts pertinent to this matter are few and mostly undisputed. Plaintiff Duane Lundberg is a duly ordained minister of the Evangelical Free Church of America and is a pastor of that church in Onawa, Iowa. Plaintiff Eric Lundberg is Pastor Lundberg's son, and a senior at Onawa High School. Plaintiffs Orville Ives and Bernadette Ives are parents of another graduating senior at Onawa High School. Defendant West Monona Community School District, a duly constituted body politic pursuant to Iowa Code chapter 274.1, includes within its jurisdiction Onawa High School.[2]

The West Monona Community School District School Board (hereinafter "the School Board") voted late this spring to ban invocation and benediction at the 1989 graduation ceremonies at Onawa High School. The testimony at the hearing in this matter established that individual members of the School Board (possibly all of them), as well as the Superintendent, Donald Southwick, personally wanted the prayer services to continue at the graduation ceremonies. Nevertheless, after considering several letters from, among others, their insurance carriers, the Iowa Attorney General's office, the Iowa Department of Education, and several reports and a newsletter,[3] the School Board became convinced that continuation of prayer at graduation ceremonies would probably violate the establishment clause of the first

---

1. This Memorandum and Order is provided as indicated in the court's Summary Order filed May 18, 1989, and should be considered in conjunction with that order.

2. In this order and the quotations set out herein, the words "School Board," "school," "state," and "government" are used interchangeably to refer

to governmental bodies, all of which the first amendment governs pursuant to the fourteenth amendment.

3. At least some of the letters, and other material, the School Board considered in making its decision exists as evidence in this case. (*See* Exhibits A through G.)

amendment to the United States Constitution.[4]

Exhibit B, for example, is the letter from the Attorney General's office to the Director of the Iowa Department of Education. This letter discusses the *Graham* and *Steele* decisions, strongly implying that failure to ban invocations and benedictions will open up the individual board members to personal liability. Exhibit A, a letter by defendant's insurance carrier, while not specifically stating that the Board members would be covered if they chose to allow prayer, also strongly implies that individual Board members would be held personally liable, and without insurance coverage, if they failed to ban invocations and benedictions.

The risk of personal liability in any suit brought under the establishment clause served as the primary motivation for School Board members to vote against inclusion of prayer.

Plaintiffs have brought suit seeking to force the School Board to reverse its decision and include prayer at the graduation ceremony to be held on May 21, 1989. At trial, Plaintiff Duane Lundberg testified that he considered prayer religious and that he instigated this suit because he wanted to be the one to invoke God's blessing on the graduation ceremony. The pastor also, after some leading questions from counsel, added that prayer had a secular purpose of lending solemnity to the ceremony, conceding, however, that there exist other, non-religious methods by which the school could invoke solemnity into the ceremonies.

## II. ANALYSIS

The first amendment to the United States Constitution reads as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of people peaceably to assemble, and to petition the government for a redress of grievances.

U.S. Const., amend. I.[5] Most relevant to this case, of the rights the first amendment guarantees, are the prohibition against the establishment of religion, the free exercise thereof, and the right to free speech. The key to understanding this case, however, is the knowledge that this is not an establishment-clause case; the establishment clause

---

**4.** The genesis for these letters and change of policy can be found primarily in Judge Vietor's recent decision in *Graham v. Central Community School District of Decatur County,* 608 F.Supp. 531 (S.D. Iowa 1985). In *Graham,* the court held that the inclusion of prayer at a graduation ceremony violated the establishment clause of the first amendment. *See Graham,* 608 F.Supp. at 537. The *Graham* decision serves as binding precedent for all cases arising in the Southern District of Iowa, but not for those arising in the Northern District. Because this court's discussion concerning the establishment clause (*infra* pages 341–46) is not necessary to the holding of this case, and therefore takes on the character of dicta, the issue of whether prayer at a prayer at a graduation ceremony violates the establishment clause of the first amendment technically remains undecided in the Northern District of Iowa. Because this court's decision concerning the establishment-of-religion clause is not necessary to the holding of this case, the court therefore neither expressly adopts or rejects Judge Vietor's holding in *Graham.* There are key differences between this case and the *Graham* case which preclude direct comparison. Primarily, this is an action by parties seeking to compel a school board to sponsor an invocation and benediction at a public high school graduation ceremony, thereby directly implicating the first amendment rights of free speech and free exercise of religion, and only indirectly implicating the establishment-of-religion clause in the first amendment. The *Graham* case involved plaintiffs seeking to prevent the school board from allowing an invocation and benediction, directly implicating the establishment clause, only indirectly implicating the free speech and free exercise-of-religion clauses. Also, to the extent that the school board's motivation for having prayer is a factor important in establishment clause analysis, that factor is missing in the case at bar. There are other facts, specific to this case only, that precludes direct comparison, just as the *Graham* court stated that it based its holding on the specific facts before it.

**5.** Our forefathers originally framed the first amendment as a limitation on the authority of Congress. Subsequently, however, passage of the fourteenth amendment made the first amendment's proscriptions applicable to the states. *See Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) (free exercise clause); *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (establishment clause).

became an issue only tangentially. Rather, plaintiffs bring their claims under the free speech and free exercise-of-religion clauses of the first amendment. Only if plaintiffs could establish a violation of their rights to free speech and free exercise of religion does the establishment-clause issue arise, for it is only then that this court would have to balance the clauses against each other.

 This court finds that defendant has not violated plaintiffs' right to free speech because plaintiffs have failed to establish that a high school graduation ceremony is a public forum. This court also finds that plaintiffs have not established that defendant violated their free exercise-of-religion rights because plaintiffs failed present competent evidence sufficient to persuade this court that public prayer at the graduation ceremony constitutes a central part of their religious beliefs. Because, as mentioned, the court did not find that defendant violated either plaintiffs' free speech or free exercise-of-religion rights, the court need not address establishment-of-religion clause concerns. Nevertheless, in the event a higher court may disagree with this court's legal conclusions, this court has taken the analysis a step further to consider alternative holdings. Even if the court deemed plaintiffs' free speech and free exercise rights violated, for the sake of analysis, the court still concludes that plaintiffs are not entitled to force a now reluctant School Board to include prayer at graduation ceremonies. The law fairly clearly holds that prayer at graduation ceremonies violates the establishment clause of the first amendment. This fact, the School Board members' awareness of the possibility that prayer may violate the establishment clause, and their consequential fear of personal liability constitutes a compelling state interest sufficient to overcome any free speech or free exercise rights. The court finally determines that plaintiffs' prayer for preliminary injunction fails under the *Dataphase* analysis.

**A. Plaintiffs' Free Speech Claim.**

Plaintiff asserts that defendant School Board's decision to drop prayer from graduation ceremonies violates their first amendment right to free speech. Freedom of speech forms the vanguard of our democratic freedoms.

> [W]hen our founding fathers, with their wisdom and patriotism, wrote [the first] amendment they ... knew what history was behind them and they wanted to ordain in this country that Congress, elected by the people, should not tell people what religion they should have or what they should believe or say or publish, and that is about it. It says "no law," and that is what ... it means.[6]

Nevertheless, no constitutional right is absolute and the right of free speech is not excluded from this rule of necessity. There exists essentially three broad types of forums in which one's right to free speech varies in scope and intensity. *See Perry Education Association v. Perry Local Educators' Association, et al.,* 460 U.S. 37, 45–46, 103 S.Ct. 948, 954–956, 74 L.Ed.2d 794 (1983).

 The first of the three forums, the one to which the first amendment confers the greatest protections, consists of those places, such as "streets and parks which 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' " *Perry,* 460 U.S. at 45, 103 S.Ct. at 954 (*citing Hague v. CIO,* 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939)). In these ultimately public forums, the state's ability to restrict or control speech is strictly limited, requiring the state to show that its content-based restriction is necessary to serve a compelling state interest, and that its restriction is narrowly drawn to achieve that end. *See Carey v. Brown,* 447 U.S. 455, 461, 100 S.Ct. 2286, 2290, 65 L.Ed.2d 263 (1980). In these ultimately public fo-

**6.** Cahn, Edmond, *Justice Black and First Amendment "Absolutes": A Public Interview,* 37 N.Y. U.L. Rev. 549, 554 (1962).

rums, the state may also "enforce regulations of the time, place, and manner of expression which are content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *See United States Postal Service v. Council of Greenburgh Civic Associations*, 453 U.S. 114, 132, 101 S.Ct. 2676, 2686, 69 L.Ed.2d 517 (1981); *Consolidated Edison Co. v. Public Service Comm'n*, 447 U.S. 530, 535–36, 100 S.Ct. 2326, 2332–33, 65 L.Ed.2d 319 (1980).

A second forum under the first amendment consists of public property which the state has opened to public use for expressive activity. *See Perry*, 460 U.S. at 45, 103 S.Ct. at 954. The Constitution forbids a state to limit some speech from a forum generally open to the public, although the state never had to create the forum in the first place. *See id.; Widmar v. Vincent*, 454 U.S. 263, 268, 102 S.Ct. 269, 273, 70 L.Ed.2d 440 (1981) (university meeting facilities); *City of Madison Joint School Dist. v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 172, 97 S.Ct. 421, 424, 50 L.Ed.2d 376 (1976) (school board meeting); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 549, 95 S.Ct. 1239, 1241, 43 L.Ed.2d 448 (1975) (municipal theater). So long as the state maintains the open character of the facility, the same limitations on a state's ability to restrict speech, present in the first type of forum discussed above, also limits the state's power in the second type of forum. *See Widmar v. Vincent*, 454 U.S. at 269–70, 102 S.Ct. at 274–75.

The final forum consists of public property which is not, by tradition or designation, the forum for public communication. *See Perry*, 460 U.S. at 46, 103 S.Ct. at 955. The state may establish reasonable time, place, and manner regulations in this last forum. *See id.* Further, the state may "reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation of speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* The "first

amendment does not guarantee access to property [in order to provide for free expression] simply because it is owned or controlled by the government." *United States Postal Service*, 453 U.S. at 129, 101 S.Ct. at 2685. Further, the Supreme Court has repeatedly cited from *Adderley v. Florida*, 385 U.S. 39, 47, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966), the proposition that "[t]he state, no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated." *See Perry*, 460 U.S. at 46, 103 S.Ct. at 955; *United States Postal Service*, 453 U.S. at 129–30, 101 S.Ct. at 2685; *Greer v. Spock*, 424 U.S. 828, 836, 96 S.Ct. 1211, 1216, 47 L.Ed.2d 505 (1976).

The court finds that a high school graduation ceremony falls within the third forum, that in which the public's right to free speech is subject to the greatest amount of government restrictions. The evidence at the hearing established that the West Monona Community School District organizes, authorizes, and sponsors the Onawa High School commencement program. The event is conducted on school property using school facilities, which event school employees carry out. The school sets the program for the commencement ceremony, having the sole discretion to dictate its content. While the school cannot dictate the actual words spoken, the school does retain control over the type of speech admissible at the ceremony. It is altogether fitting and proper that the school have the power to control what occurs at a graduation of its seniors.

The bottom line is that while the school could have, it did not create the graduation ceremony "for the purpose of providing a forum for expressive activity. That such activity occurs in the context of the forum created does not imply that the forum thereby becomes a public forum for first amendment purposes." *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788, 805, 105 S.Ct. 3439, 3450, 87 L.Ed.2d 567 (1985). The School Board is allowed to ban prayer in this nonpublic forum "as long as the regulation on

speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry*, 460 U.S. at 46, 103 S.Ct. at 955. The School Board acted reasonably, given legitimate and real concerns that prayer at the graduation ceremony may violate the establishment clause and open individual members of the School Board to personal liability; the School Board did not ban prayer because of its content, but because of the subject matter. The superintendent, for example, testified that he would equally ban a Buddhist from giving prayer at the ceremony, explaining that the program did not include the subject of religious worship. The School Board's ban would be content-based if they had banned only Christian or only Buddhist prayer, for example.

The recent the Supreme Court case of *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988), is particularly instructive. In *Hazelwood*, a school removed entire pages dealing with issues such as birth control and divorce from copies of a high school newspaper. Challenged on freedom of speech grounds, the United States Supreme Court upheld the school's action, holding that a school possesses the right to control "school-sponsored publications, theatrical productions, and other expressive activities that students, parents, and members of public might reasonably perceive to bear the imprimatur of the school." *Hazelwood*, at 271, 108 S.Ct. at 569, 98 L.Ed.2d at 605. The court also held that the plaintiff failed to demonstrate the school's "clear intent to create a public forum." *Id.*, at 270, 108 S.Ct. at 569, 98 L.Ed.2d at 604.

*Hazelwood* is particularly appropriate to the case at bar, for in both cases the schools base their regulations of speech on subject matter, not content. As in *Hazelwood*, where the school board banned printed expression of certain subject matter (e.g., birth control and divorce) because it had a reasonable belief that the subject matter was inappropriate, likewise, the School Board in the case at bar banned certain subject matter from graduation ceremonies (i.e., religion) believing such a subject is inappropriate at a school activity. In neither case did the schools ban the speech based on the point of view. In *Hazelwood*, the subjects of birth control and divorce the school board deemed unsuitable for immature minds regardless of whether the articles advocated the practices or not. In the case at bar, the School Board deemed religion inappropriate, banning equally from speaking those who believe in no god, those who believe in one God, and those who believe in many.

Plaintiffs' recitation of certain cases failed to persuade the court that this court may deem a graduation ceremony a public forum.[7] First, plaintiffs do not cite any case suggesting that other courts have considered similar graduation ceremonies public forums. This court is aware that plaintiffs carry the burden of proof in this case. Second, the cases plaintiffs cite do not comport with the facts in the case at bar. Plaintiffs place heavy reliance on *Tinker v. Des Moines School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), in which the court held that students had the right to wear black arm bands in silent protest of the Vietnam War. 393 U.S. at 506, 89 S.Ct. at 736. The key difference between this case and *Tinker* is that the

---

**7.** An Amicus of the court has brought this court's attention to a secondary authority—Whitehead, *Avoiding Religious Apartheid: Affording Equal Treatment for Student–Initiated Religious Expression in Public School*, 16 Pepp. L.Rev. 229 (1989), to support plaintiffs' position. The full import of this article, however, is to emphasize that, while school-sponsored religious activities fall within the ambit of the establishment clause and the schools can therefore ban such activities, student-initiated religious activity is entitled to free speech protection. *See Whitehead, supra* at 252. The court

does not dispute this proposition and in fact encourages students who feel compelled by the strength of their religious beliefs to hold their own service prior to the graduation ceremony. Such student-led religious activity does not endanger the establishment clause. *See Reed v. Van Hoven*, 237 F.Supp. 48 (W.D.Mich.1965) (student-initiated voluntary prayer before commencement of school day held constitutional). The fact remains, however, that, if permitted, the speech which plaintiffs' claim a right to exercise would be school-sponsored.

latter concerned student-initiated, student-organized, student-expressed symbolic "speech" (the wearing of an arm band). We do not have a similar situation in the case at bar. While the school in *Tinker* had no fear that others could attribute the students' acts of self-expression to the school's position, the School Board here has a real and legitimate concern that prayer at a school-run function may work to stamp the belief in God with the imprimatur of the school and of the state. The School Board, once it made the decision that there would be no prayer, for whatever reason, has a compelling interest in maintaining its neutrality on the issue of religion, especially before impressionable youngsters.

Plaintiffs also place reliance on the cases of *Widmar*, 454 U.S. at 268, 102 S.Ct. at 273; *City of Madison*, 429 U.S. at 169, 97 S.Ct. at 423; and *Southeastern Promotions, Ltd.*, 420 U.S. at 549, 95 S.Ct. at 1241. These cases, however, the court may easily distinguish on their facts. *Widmar* involved the university meeting facilities, *City of Madison* involved a school board meeting, and *Southeastern Promotions, Ltd.* involved a municipal theatre. These cases, therefore, involve forums which the state had set aside for expressive activities. The only limitations the state normally exercises over these forums are reasonable time, place, and manner restrictions, and those only to ensure equal access for varying views. Graduation ceremonies have never served as forums for public debate or discussions, or as a forum through which to allow varying groups to voice their views. Schools hold graduation ceremonies for very limited secular purposes—to congratulate graduates of the high school.

■ This court cannot hold that plaintiffs' first amendment right to free speech entitles them to force the School Board to provide a stage upon which plaintiffs may express their views concerning religion.[8] Plaintiffs' right to free speech, while a precious right, is not so powerful as to call for the resources of the state to further that right. The first amendment, it must be remembered, reads in the negative, not in the affirmative; "Congress shall make no law ... abridging the freedom of speech." The first amendment does not read "Congress shall provide forums through which the populace may express their views."[9]

### B. Plaintiffs' Free Exercise of Religion Claim.

Plaintiffs also claim that the School Board's ban on prayer at the Onawa High School graduation ceremonies violates their right to free exercise of their religious beliefs[10] as guaranteed under the first and fourteenth amendments.[11] When the court addresses free exercise-of-religion claims,

---

**8.** Even if the court were to hold that a high school graduation ceremony constitutes a public forum, the School Board would still have the right to ban prayer at the graduation ceremony because it has a compelling state interest in not violating the establishment clause of the first amendment. It should be noted that, for the purposes of determining whether they have a compelling state interest to ban prayer (if the court were to deem the forum public) it is irrelevant whether such graduation prayer *actually* violates the establishment clause—it is enough that the School Board had a reasonable basis for believing that it would.

**9.** *See,* Cahn, *supra* n. 6 at 553 ("I learned a long time ago that there are affirmative and negative words. The beginning of the first amendment is that 'Congress shall make no law.'").

**10.** The court does not herein address what it considers a collateral issue not directly before

it: whether asking to force the state to allow public prayer at a graduation ceremony breaks the boundary between "belief" and "action," the first amendment absolutely guaranteeing the first, but not the second. *See Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1878).

**11.** To some extent, free speech analysis and free exercise analysis are intertwined. For an argument that the court should treat free exercise as a subset of free speech, *see generally* Marshall, *"Solving the Free Exercise Dilemma: Free Exercise as Expression",* 67 Minn.L.Rev. 545 (1983). To the extent that this is true, the court's analysis in ruling under plaintiffs' free speech claim shall control here as well. Nevertheless, a key inquiry, distinct and unique to free exercise claims—whether or not the activity constitutes an essential tenet of plaintiffs' religion—requires separate analysis.

the court must always remain wary lest its accommodation for some consummates an establishment for many. A safeguard, and initial hurdle, which acts to prevent courts from being too quick to order accommodation, is the requirement that the plaintiffs demonstrate that the activity in which they seek to engage is "inseparable and interdependent" with their religious beliefs. *See Wisconsin v. Yoder*, 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972). In *Yoder*, the Court upheld the right of Amish people to teach their children at home after the eighth grade because the court found as "rooted in religious belief their history and values involved in teaching their children a special way of life." *Id.* The court held that the practice was "fundamental" and "mandated by the Amish religion." *Id.* at 216, 92 S.Ct. at 1533. Similarly, in *Sherbert v. Verner*, 374 U.S. 398, 406, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965 (1963), the Court found observance of the Sabbath a "cardinal principle" for a Seventh Day Adventist.[12]

In contrast, plaintiffs have made no showing that *public* prayer at a graduation ceremony is a practice "rooted" in their religious beliefs. Plaintiffs allege that "the basic tenets of their religious faith dictate that it is appropriate, proper and desirable to acknowledge the spiritual aspects of life upon such an occasion by way of including a simple invocation and benediction as part of the ceremonial event." (Plaintiffs' Brief at 8.) Further, plaintiffs repeated the essence of the above-quoted statement on the stand. Yet, this statement does not make *public* prayer rise to the level of a "fundamental belief," or a "cardinal principle," of plaintiffs' religious beliefs.

The key distinction plaintiffs fail to recognize is between public and private prayer. It may well be that *prayer* at such events does form a "cardinal principle" of plaintiffs' religious beliefs. Yet, this is not the same as *public* prayer at a school activity. Judge Vietor faced a similar argument

in *Graham v. Central Community*, and stated that:

> The first amendment right of the people to free exercise of their religion does not give them a right to have government provide them public prayer at government functions and ceremonies, even if the majority would like it.

608 F.Supp. at 537. In other words, plaintiffs are free to pray on their own at the graduation ceremonies, but this right to free exercise of religion does not mean that they can "use the machinery of the state to practice [their] beliefs." *Abington School Dist. v. Schempp*, 374 U.S. 203, 226, 83 S.Ct. 1560, 1573, 10 L.Ed.2d 844 (1963). As the Supreme Court has so aptly stated:

> Never to our knowledge has the Court interpreted the first amendment to require the government itself to behave in ways that the individual believes will further his or her spiritual development or that of his or her family. The free exercise clause simply cannot be understood to require the government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens. Just as the government may not insist that [the plaintiffs herein] engage in any set form of religious observance, so [the plaintiffs herein] may not demand that the government join in their chosen religious practices.... [T]he free exercise clause is written in terms of what the government cannot do to the individual, not in the terms of what the individual can extract from the government. *Sherbert v. Verner*, 374 U.S. 398, 412 [83 S.Ct. 1790, 1718, 10 L.Ed.2d 965] (1963) (Douglas, Justice, concurring).... The free exercise clause affords an individual protection from certain forms of governmental compulsion; it does not afford an individual a right to dictate conduct of government's internal procedures.

*Bowen v. Roy*, 476 U.S. 693, 699–700, 106 S.Ct. 2147, 2151–2152, 90 L.Ed.2d 735 (1986).

---

**12.** *See also Braunfeld v. Brown*, 366 U.S. 599, 602, 81 S.Ct. 1144, 1145, 6 L.Ed.2d 563 (1961) (Court found Jewish observance of Sabbath on Saturday a "basic tenet" of Orthodox Jewish faith).

Therefore, the court finds that the School Board's ban on prayer at graduation ceremonies does not violate plaintiffs' right to free exercise of their religious beliefs under the first amendment. First, to the extent that their free exercise-of-religion claim involves their free speech rights, plaintiffs' claim fails for a high school graduation ceremony is not a public forum and the defendant possessed a reasonable basis for excluding the subject of religion from the ceremony. To the extent that plaintiffs assert their free exercise-of-religion rights independent of their free speech rights, the plaintiffs' claim fails for they have not shown that public prayer at a school-sponsored event, as opposed to private prayer at any important event, constitutes a basic and integral part of their religious beliefs necessitating accommodation.

C. Establishment Clause Implications.

Because this court has held that defendant's ban on prayer at graduation ceremonies does not violate plaintiffs' first amendment rights to free speech or free exercise of religion, the court need not go further. Nevertheless, in the event that a higher court may disagree with this court's legal conclusions up to this point, the court finds it appropriate to conduct some analysis in the alternative, assuming for the sake of argument, *but not holding,* that plaintiffs have established a violation of their right to free speech and free exercise of religion.[13]

In evaluating this issue, the court must make a two-step analysis. First, *the court must determine whether the inclusion of prayer at high school graduation ceremonies violates the establishment clause of the first amendment.* If the court finds that jt does not, then presumably prayer should be allowed so as to prevent the violation of plaintiffs' first amendment rights of free speech and free exercise of

religion. If, on the other hand, the court determines that prayer at graduation ceremonies violates the first amendment establishment clause, the court must then conduct a balancing test in which it weighs the relative importance of the rights guaranteed under the first amendment as they apply to the particular facts of this case.

1. *Prayer at graduation ceremonies violates the establishment clause of the Constitution.*

The first and fourteenth amendments prohibit the government from acting to establish religion. To a large extent, the founding of our country rests upon the efforts of the early settlers of this country to escape the religious persecutions in Europe. The first amendment reflects this history evincing "a widespread awareness among many Americans of the dangers of the union of church and state." *Engel v. Vitale,* 370 U.S. 421, 429, 82 S.Ct. 1261, 1266, 8 L.Ed.2d 601 (1962). History served as a lesson to our ancestors that government-established religion led to the inevitable result of "hatred, disrespect and even contempt of those who held contrary beliefs." *Id.* at 431, 82 S.Ct. at 1267. "Indeed, the drafters of the Constitution recognized that only the existence of a multitude of religions could guarantee the freedom of all religions."[14]

While the establishment clause requires the separation of church and state, it does not require a total separation. *See Lemon v. Kurtzman,* 403 U.S. 602, 614, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971). Recognizing that "[s]ome relationship between government and religious organizations is inevitable," *id.,* the *Lemon* Court established a three-part analysis by which to determine whether the first amendment establishment clause permits a particular practice.

First, the statute must have a secular purpose; second, its principle or primary

---

**13.** A sub-issue also not directly before this court is whether religious speech receives protection under the first amendment's free speech clause. Were this issue before the court, the court would have to hold that the first amendment entitles religious speech full protection as it

does nonreligious speech. *See Chess v. Widmar,* 635 F.2d 1310, 1314 (8th Cir.1980).

**14.** The Federalist No. 51, at 324–25 (J. Madison) (C. Rossiter ed. 1961).

effect must be one that neither advances nor inhibits religion ...; finally, the statute must not foster "an excessive government entanglement with religion." *Id.* at 612–13, 91 S.Ct. at 2111–12 (citations omitted). Viewing prayer at graduation ceremonies under the *Lemon* standard, the court concludes that it would violate the establishment clause.

a. Secular Purpose.

Plaintiffs' claim that prayer at high school graduation ceremonies is not a violation of the establishment clause fails, to begin with, because they have not demonstrated that it serves a secular purpose. The Fifth Circuit has described prayer as "perhaps the quintessential religious practice for many of the world's faiths.... Prayer is an address of entreaty, supplication, praise, or thanksgiving directed toward some sacred or divine spirit, being, or object." *Karen B. v. Treen*, 653 F.2d 897, 901 (5th Cir.1981), *aff'd*, 455 U.S. 913, 102 S.Ct. 1267, 71 L.Ed.2d 455 (1982). *See also Collins v. Chandler Unified School District*, 644 F.2d 759, 762 (9th Cir.1981) (court held unconstitutional practice of granting student council members permission to re-

cite prayers at voluntary school assemblies). Further, the United States District Court for the Southern District of Iowa, faced with the same issue of prayer at graduation ceremonies, found such prayer to serve a religious, not a secular purpose. *See Graham*, 608 F.Supp. at 535. Finally, plaintiff Pastor Lundberg testified that the reason he wanted to offer a prayer was for religious purposes.[15]

Plaintiffs asserted, somewhat weakly, at the hearing in this matter that prayer serves the secular purpose of conferring solemnity to the ceremony.[16] The school may not, however, "employ religious means to serve secular interest, however legitimate they may be, at least without the clearest demonstration that nonreligious means will not suffice." *School District of Abington Township v. Schempp*, 374 U.S. 203, 265, 83 S.Ct. 1560, 1594, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring). *See also Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 123–24, 103 S.Ct. 505, 510–11, 74 L.Ed.2d 297 (1982) (secular or legislative purpose of protecting spiritual, cultural and educational facilities from detrimental effects of liquor establishments does not

**15.** One commentator has stated that the court cannot look at the speaker's motivation, but rather, the court must look to determine whether the "primary purpose of the sponsoring governmental body is secular." Comment, *Invoking the Presence of God at Public High School Graduation Ceremonies: Graham v. Central Community School District*, 71 Iowa L.Rev. 1232, 1258 (1986) (hereinafter "Invoking the Presence of God"). In that article, however, the student-author criticized the holding in *Graham*, which included a factual pattern where the school board approved an invocation and benediction. In the case at bar, the School Board has voted against an invocation and benediction. The court suggests that, in this case, there is no purpose of the sponsoring governmental body to review.

**16.** Plaintiff Duane Lundberg, however, admitted on the stand that he viewed prayer as a religious undertaking. The Reverend's testimony exemplifies the applicability of the Fifth Circuit's interpretation of prayer as set out in *Collins*, 644 F.2d at 762. At any rate, "an 'avowed' secular purpose is not sufficient to avoid conflict with the first amendment." *Stone v. Graham*, 449 U.S. 39, 41, 101 S.Ct. 192, 193, 66 L.Ed.2d 199 (1980).

In a recent student law review article reviewing Judge Vietor's order in *Graham*, the author

cites three secular purposes: adding formality to the ceremony, establishing a solemn tone, and maintaining the traditional nature of the proceeding. *See Invoking the Presence of God, supra*, note 15, at 1257. The author argues that graduation ceremonies did not have required attendance, and that the ceremonies marked the observance of a secular achievement and transitional period for the students, consisting primarily of awarding honors and diplomas. *Id.* The author posits that "[i]t is difficult to conclude that advancement of religion was the purpose of the exercise, since the entire program was neither educational nor religious." *Id.* The court agrees completely with the author on this point, and yet can hold, without contradicting that agreement, that prayer at a graduation ceremony has a religious purpose. The author's logic is faulty: he is evaluating the religious purpose of the graduation ceremony as a whole; the court must review the religious purpose of the one controversial part of an otherwise unobjectionably secular ceremony—the court must determine whether the prayer itself is religious in nature and the court concludes that it is if it parallels any of the prayers said in the 1986, 1987, or 1988 graduation ceremonies at Onawa High School as set out in Exhibit H.

mean that churches may effectively veto liquor licenses); *Doe v. Aldine Independent School Dist.*, 563 F.Supp. 883, 886 (S.D.Tex.1982) ("a school district or other government body cannot seek to advance nonreligious goals and values, no matter how laudatory, through religious means.... [W]hen a nonreligious purpose may be promoted through nonreligious means, a state may not employ religious ones").

The defendant urged, and plaintiffs seemed to concede, that other methods, such as reading passages from one of Shakespeare's plays, could lend solemnity to the graduation ceremony. Thus, even if this court were to accept plaintiffs' assertion that prayer at graduation ceremonies serves a secular purpose, which assertion this court does not accept,[17] the court nonetheless agrees that nonreligious methods of adding solemnity are available as "substitutes."

In the discussions between the court and counsel, it was suggested that nondenominational or nonsectarian prayers might be used. The pastor never adopted this suggestion, but, to the contrary, the pastor stated that his prayers in the past have evoked the name of Jesus Christ and that he wanted to give the prayer at this convocation in order to bring God's blessing to the ceremony, laudatory words to some, of course, but hardly nonsectarian.

Because the plaintiffs have not testified that they plan on presenting a nonsectarian or nondenominational prayer, their case is distinguishable from *Stein v. Plainwell Community Schools*, 822 F.2d 1406 (6th Cir.1987). In *Stein*, the court held that the first amendment establishment clause does not prohibit an invocation and benediction ceremony so long as "[t]hey are framed and phrased so that they [do not] symbolically place the government's seal of approval on one religious view." *Id.* at 1410. The court held the view that prayer would not violate the Constitution so long as the speaker made it nonsectarian. *Id.* This court finds that prayer is religious and, to that extent, disagrees with the *Stein* court's holding.[18] But at any rate, plaintiffs cannot avail themselves of *Stein* because they have not offered to give, nor provided an example of, a nonsectarian prayer.

Even if plaintiffs had agreed to a nonsectarian "prayer," the greater weight of the law is still against them. In *Engel v. Vitale*, 370 U.S. 421, 428, 82 S.Ct. 1261, 1265, 8 L.Ed.2d 601 (1962), the Supreme Court held unconstitutional a ten-second school prayer devoid of any sectarian terms. Similarly, in *DeSpain v. DeKalb County Community School District 428*, 384 F.2d 836, 839 (7th Cir.1967), *cert. denied*, 390 U.S. 906, 88 S.Ct. 815, 19 L.Ed.2d 873 (1968), the court held unconstitutional the recitation in school of a four-line poem supposedly devoid of any sectarian references. Thus, the court finds that prayer at a public high school graduation ceremony serves a religious purpose, any secular effect it may have being ancillary and unintended.

### b. Effect of advancing religion.

Even if plaintiffs could establish that graduation prayer possesses a secular purpose, such a prayer nevertheless violates the establishment clause because it could, "in part [,] have the effect of advancing religion." *See Tilton v. Richardson*, 403 U.S. 672, 683, 91 S.Ct. 2091, 2098, 29 L.Ed.2d 790 (1971). The United States District Court for the Southern District of Iowa, faced with this identical issue, found that invocation and benediction "have as their primary effect the advancement of the Christian religion." *Graham*, 608

---

**17.** For example, the United States Supreme Court found that the posting of the Ten Commandments in a classroom violated the establishment clause, stating that, although some of the commandments could be divorced from religion and thereby possess a secular purpose, some of the commandments have clearly a religious purpose. *See Stone v. Graham*, 449 U.S. at 41–42, 101 S.Ct. at 193–194. Similarly, while

a prayer could possibly have a tangential secular purpose, it is inextricably tied to a clearly religious purpose.

**18.** "That [a prayer] may contemplate some wholly secular objective cannot alter the inherently religious character of the exercise." *Karen B.*, 653 F.2d at 901.

F.Supp. at 536. Similarly, in *Collins*, the court found that the primary effect of student-led prayer at a voluntary school assembly appears to be the advancement of religion. *Collins*, 644 F.2d at 763.[19]

A kind of litmus test in deciding whether a particular activity has the effect of advancing religion is whether allowing the activity to occur could be seen as lending the imprimatur of government to a particular view of religion. In barring a state from including a short "motorist prayer" on state maps, the Supreme Court stated:

> By printing a prayer on the official map, the state is placing its power and support behind a particular form of theological belief, and state sponsorship of religion is one of the primary encroachments the [establishment] clause seeks to inhibit.

> \* \* \* \* \* \*

A prayer, because it is religious, does advance religion, and the limited nature of the encroachment does not free the state from the limitations of the establishment clause.... "By placing its im-

primatur on the particular kind of belief embodied in the prayer, the state necessarily offends the sensibilities not only of nonbelievers but of devout believers among the citizenry who regard prayer 'as a necessarily private experience.'" *Abington School District v. Schempp*, 374 U.S. at 283–85 [83 S.Ct. at 1603–604] (Brennan, J., concurring).

*Hall v. Bradshaw*, 630 F.2d 1018, 1020–21 (4th Cir.1980). Numerous courts have held that the mere use of government property for religious activities effectively promotes religion, suggesting government approval.[20] It makes little difference that the prayer in the case at bar would take place at an essentially extracurricular activity.[21] The voluntariness of attendance at the ceremony does not decrease the concern that prayer at the ceremony might still appear to have the stamp of school approval.

Despite the defendant's contention, the voluntariness of the ceremony is not dispositive of the matter. Graduation is an important event for students. It represents official recognition of the success-

---

**19.** This court wonders, however, whether this "advancement" of religion is anything but de minimis, not rising to the level of a constitutional violation. The Supreme Court approached such a holding in *Marsh v. Chambers*, 463 U.S. 783, 792, 103 S.Ct. 3330, 3336, 77 L.Ed.2d 1019 (1983), when it stated that "[t]o invoke Divine guidance on a public body entrusted with making the laws is not, in these circumstances, an 'establishment' of religion or a step toward establishment; it is simply a tolerable acknowledgment of beliefs widely held among the people of this country." The *Marsh* language cited above is not, however, the basis for the Court's holding; rather, the Court established the exception for legislative prayer based on the "unique history" of the practice in the United States. *Id.* at 791, 103 S.Ct. at 3335. Further, the Court took particular note in that case that the prayer came before adults, not children whom it considered more susceptible to religious indoctrination. *Id.* at 792, 103 S.Ct. at 3336. Finally, authority exists suggesting that "it is no defense to urge that the religious practices ... may be relatively minor encroachments on the first amendment." *Abington School Dist.*, 374 U.S. at 225, 83 S.Ct. at 1573. *See also Stone v. Graham*, 449 U.S. at 42, 101 S.Ct. at 194.

**20.** *See, e.g., Lubbock Civil Liberties Union v. Lubbock Independent School Dist.*, 669 F.2d 1038 (5th Cir.1982) (allowing students to congregate

in vacant classrooms for religious clubs impermissible endorsement of religion); *Brandon v. Board of Educ. of Guilderland Central School Dist.*, 635 F.2d 971, 978 (2d Cir.1980) (allowing students to congregate in vacant classrooms for religious clubs impermissible endorsement of religion); *Hernandez v. Hanson*, 430 F.Supp. 1154, 1162 (D.Neb.1977) (allowing dissemination of sectarian literature on school property impermissible endorsement of religion); *Goodwin v. Cross County School Dist. No. 7*, 394 F.Supp. 417, 423 (E.D.Ark.1973) (allowing students to read prayer in school impermissible sponsorship of religion).

**21.** *See Doe v. Aldine Independent School Dist.*, 563 F.Supp. at 887:

> Since these extracurricular events were school sponsored and so closely identified with the school program, the fact that the religious activity took place in a nonreligious setting might create in a student's mind the impression that the state's attitude toward religion lacks neutrality. The Supreme Court has noted that "to an impressionable student even the merest appearance of secular involvement in religious activities might indicate that the state had placed its imprimatur on a particular religious creed. This symbolic inference is too dangerous to permit." *Roemer v. Board of Public Works*, 426 U.S. 736, 750, 754, 96 S.Ct. 2337, 2346, 2348, 49 L.Ed.2d 179 (1976).

ful completion of several years of scholastic endeavor and symbolizes transition into a more mature society than was previously available to the students. It is cruel to force any individual to violate his conscience in order to participate in such an important event in the individual's life.

*Lemke v. Black,* 376 F.Supp. 87, 89–90 (E.D.Wis.1974). *See also Jager v. Douglas County School Dist.,* 862 F.2d 824, 832 (11th Cir.1989) (holding practice of delivering prayers before high school football games unconstitutional, court rejected voluntariness argument, stating that "[t]he Establishment clause focuses on the constitutionality of the state action, not on the choices made by the complaining individual.") Thus, the court concludes that prayer at the graduation ceremony would have the primary effect of advancing religion, therefore violating the establishment clause of the first amendment.

The Supreme Court's holding in *Lynch v. Donnelly,* 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), makes this court hesitate, however. In *Lynch,* the Supreme Court upheld the constitutionality of a city's Christmas display of a nativity scene, even though it acknowledged the religious nature of the display. *Id.* at 679, 104 S.Ct. at 1362. The *Lynch* Court allowed the display based on the context, acknowledging the traditional and historical origins of the Christmas holiday and noting that the city evinced no intent to advance religion. *Id.* at 681, 104 S.Ct. at 1363.[22] Although it is a close question, the court believes the facts of *Lynch* and the case at

bar distinguishable. First of all, there is no government intent to which the court may look in this case, either to find religious or secular purposes. The court can only look at the plaintiffs' intent, which the court is convinced is purely religious. Second, the history and tradition of religion with the Christmas holiday ties in religion to a much greater degree than does graduation ceremonies; the origin of graduation ceremonies, unlike Christmas, cannot be attributed to an inherently religious event. For those reasons, the court does not find *Lynch* binding precedent. The court suggests that cases such as *Marsh* and *Lynch,* in which the Supreme Court creates exceptions based on "unique histories," demonstrates the inherent problem for courts to rule consistently and predictably. The court also fears that such "exceptions" may some day grow to the point of swallowing the rule.

c. Excessive government entanglement.

Defendant did not argue that allowing prayer at the graduation ceremony would constitute excessive government entanglement with religion. Plaintiffs argue that it would not. The court will assume that it would not.

d. Conclusion under *Lemon.*

After applying the *Lemon* test, the court concludes that the prayer at the graduation ceremony violates the establishment clause of the first amendment. Many other courts have reached the same conclusion.[23] Other courts have not.[24] But the court

**22.** A lower court has subsequently found another nativity scene to violate the establishment clause. *See ACLU v. City of Birmingham,* 588 F.Supp. 1337 (E.D.Mich.1984). While the court acknowledges this case, the Supreme Court's opinion in *Lynch* is much more binding authority.

**23.** *See, e.g., Doe v. Aldine Independent School Dist.,* 563 F.Supp. 883 (S.D.Tex.1982); *Bennett v. Livermore Unified School Dist.,* 193 Cal.App.3d 1012, 238 Cal.Rptr. 819 (1 Dist.1987); *Kay v. David Douglas School Dist. No. 40,* 79 Or.App. 384, 719 P.2d 875 (1986), *reversed on other grounds* 303 Or. 574, 738 P.2d 1389 (1987); and *Graham v. Central Community School Dist. of Decatur County,* 608 F.Supp. 531 (S.D.Iowa

1985). *Cf. Jager v. Douglas County School Dist.,* 862 F.2d 824 (11th Cir.1989) (practice of giving invocations prior to high school football games violates establishment clause of the first amendment); *Steele v. Van Buren Public School Dist.,* 845 F.2d 1492 (8th Cir.1988) (without deciding the establishment clause question, court affirmed district court's holding that permitting teachers to conduct prayer and religious activity at mandatory school functions violated establishment clause).

**24.** *See Stein v. Plainwell Community Schools,* 822 F.2d 1406 (6th Cir.1987) (court held that invocations or benedictions could be delivered at high school commencement ceremony so long as they did not employ Christian theology

finds those cases unpersuasive. Like the court in *Graham,* this court finds that the judges in those cases placed undue emphasis on the voluntariness of attendance, *see Graham,* 608 F.Supp. at 537, and this court adopts the reasoning in *Lemke v. Black,* 376 F.Supp. 87, 89–90 (E.D.Wis.1974).

Plaintiffs seek to escape the *Lemon* test by invoking the *Marsh* exception discussed earlier.[25] Upon the record as it currently stands, however, the *Marsh* exception is not controlling.[26] The *Marsh* court created an exception for legislative prayer based upon "a unique history" demonstrating that the drafters of the Constitution and the first amendment nevertheless employed a legislative chaplain. 463 U.S. at 789, 103 S.Ct. at 3335. In another case, however, a district court held that "there is a complete lack of evidence that our founding fathers were aware of the practice of placing crosses or Stars of David in public parks.... The defendant has cited the court to no constitutional debates, personal letters of our founding fathers, or written authorities that would even infer such a contention." *Greater Houston Chapter of ACLU v. Eckels,* 589 F.Supp. 222, 237 (S.D.Tex. 1984). Similarly, the plaintiffs here have proffered no real evidence along this line.

Plaintiffs seek to invoke the *Marsh* analysis, however, by relying on a long history, over one hundred years, of including an invocation and benediction at the Onawa graduation ceremonies. Neverthe-less, a practice, however long maintained, does not automatically bring a case into the *Marsh* exception. *See Marsh,* 463 U.S. at 790, 103 S.Ct. at 3335 ("standing alone, historical patterns cannot justify contemporary violations of constitutional guarantees...."); *see also Jager v. Douglas County School Dist.,* 862 F.2d 824, 828 (11th Cir.1989) ("because *Marsh* was based on more than two hundred years of the 'unique history' of legislative invocations, it has no application to the case at bar."); *Carter v. Broadlawns Medical Center,* 857 F.2d 448, 453 (8th Cir.1988) ("nor is Broadlawns' evidence of relatively long-standing practices in Iowa sufficient to win the day under *Marsh,* since *Marsh* made it clear that the mere fact that a practice has been carrying on for a long time is not determinative...."). Therefore, this court can do little else but conclude that prayer at the high school graduation ceremonies would violate the establishment clause of the first amendment.

### 2. *Balancing Test.*

Having assumed, for the sake of analysis, that plaintiffs could prevail so far as showing a violation of their first amendment rights to free speech and free exercise of religion, and having found that public prayer at a high school graduation ceremony violates the establishment clause of the first amendment, this court then finds itself obliged to balance conflicting conclu-

---

in prayer or otherwise symbolically place government's seal of approval on one religious view). See also three earlier cases in which courts have ruled that prayer at commencement exercises did not violate the establishment clause: *Grossberg v. Deusebio,* 380 F.Supp. 285, 292–93 (E.D.Va.1974) (noting that "the issue was a close one"); *Wood v. Mount Lebanon Township School Dist.,* 342 F.Supp. 1293 (W.D.Pa. 1972); *Wiest v. Mount Lebanon Township School Dist.,* 457 Pa. 166, 320 A.2d 362 (1974). The court in *Lemke v. Black,* 376 F.Supp. 87 (E.D.Wis.1974), *vacated and remanded,* 525 F.2d 694 (7th Cir.1975), expressly rejected the reasoning of *Wood.*

**25.** *See, supra,* note 19.

**26.** Plaintiffs raised an issue at the end of the hearing which could change the applicability of *Marsh.* Plaintiffs' counsel stated at the close of argument that the Northwest Ordinance (Ordinance of 1787, art. 3 (1787), reprinted in *Documents Illustrative of the Formation of the Union of American States* 52 (1927)), which the first Congress passed, bespoke of religion in schools in the new territory. To the extent that the *Marsh* reasoning holds merit, a similar argument under the Northwest Ordinance might also. The parties have not provided this court with the legislative history and documentation necessary to allow this court to undertake a *Marsh*-type analysis, nor have they attempted to answer basic questions like: Did the Northwest Ordinance govern territory from which the settlers carved the state of Iowa, when the United States did not purchase this land until the Jefferson administration and the Louisiana Purchase in 1803 from Napoleon? Besides, the court is reluctant to delve into such a quagmire when it is not essential to the holding of this case.

sions under the separate clauses of the first amendment. The Third Circuit has shed at least some light on how a court might approach this "constitutional conflict of the highest order." *Bender v. Williamsport Area School Dist.*, 741 F.2d 538, 539 (3d Cir.1984). In *Bender*, the court noted that the court must reach some compromise between the guarantees of each clause when they come into conflict as they could here. *Id.* at 558. The court stated the test as follows:

> In those cases in which there is a true and uncontrived conflict between the free speech clause on the one hand, and the establishment clause on the other, we believe that the appropriate analysis requires weighing the competing interests protected by each constitutional provision, given the specific facts of the case, in order to determine under what circumstances the net benefit which accrues to one of these interests outweighs the net harm done to the other. Recognizing that, under these circumstances, some constitutional protections must unavoidably be abridged, we believe that our role is to maximize, as best as possible, the overall measure of the fundamental rights created by the framers, by deciding which course of action will lead to the lesser deprivation of those rights.

*Id.* at 559.

Applying this balancing test to the case at bar, the court finds that the interest in preventing the establishment of religion in this case overcomes plaintiffs' interests in exercising their first amendment rights to free speech or free exercise of religion. We start with the School Board's decision, whatever may be the individual members' inclinations, to reverse the long-accepted status quo and ban prayer at the graduation ceremony. Plaintiffs, therefore, bear the burden of upsetting the new position of the School Board. The court also must

consider the potentially greater effect a violation of the establishment clause carries, as it affects *all* the graduating seniors who would be forced to hear the prayer, not just the four plaintiffs who would not be able to hear the prayer if there was a violation of their first amendment rights.[27] It must be remembered that plaintiffs may always pray on their own, or silently, and to that extent, even if they have a right to public prayer at the ceremony, the denial of that right is not as serious a violation as the alternative. Therefore, the court concludes that were it to have to weigh the interest between the establishment clause and plaintiffs' first amendment rights, given the specific facts of this case, the court would opt in favor of preventing the violation of the establishment clause.

## D. Dataphase.

This matter is before the court on plaintiffs' motion for a preliminary injunction, the standard for which the case of *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir.1981) (en banc), establishes in the Eighth Circuit. The court therein held that in order for the movant to demonstrate entitlement to a preliminary injunction, the movant must establish "(1) the threat of irreparable harm to the plaintiff; (2) the state of balance between this harm and the injury that granting the injunction will inflict on the other parties litigant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest." *Id.* at 114. Applying these standards to the case at bar, the court concludes that plaintiffs have failed to establish entitlement to a preliminary injunction.

Under the first part of the *Dataphase* test, plaintiffs would prevail because, once the time for the convocation has come and gone, a prayer at a later time could not

---

**27.** Little evidence is before the court on considerations of all the other graduating seniors and their parents at Onawa High School. While Pastor Lundberg testified that he has received nothing but support, the court cannot assume, without concrete evidence, that there is no opposition. The court must assume that a viola-

repair the denial of their first amendment rights.[28] In balancing the *"Dataphase* harms" to both sides, the court would be forced to find the constitutional "transgressions" to the four plaintiffs would be outweighed by the "transgressions" to the rest of those attending even though it should be assumed that the four plaintiffs would have supporters present. To the extent that this involves another balancing test, the court refers back to its balancing test conducted in part C(2) of this order. Plaintiffs' position is weakest under the third prong of the *Dataphase* test. As the prior analysis demonstrates, before plaintiffs stand a long row of hurdles, over which this court finds plaintiffs unable to clear. Plaintiffs clearly stand little, if any, chance of success on the merits. Finally, the court would have to conclude that the public interest lies in favor of preventing the establishment of religion in our public schools. School children are especially susceptible to indoctrinization, and while religious beliefs and doctrines contain some of the mores upon which we base our society, religion, like morality generally, should not be legislated, should not be dictated by the courts, and should not be forced upon our students in public schools.

### III. CONCLUSION

Upon the foregoing;

IT IS HEREBY ORDERED that plaintiffs' motion for a preliminary injunction is denied. Plaintiffs' have failed to demonstrate a violation of their first amendment rights to free speech or free exercise of religion. In the alternative, the court finds that public prayer at public high school graduation ceremonies violates the establishment clause of the first amendment to the United States Constitution.

---

tion of the establishment clause would injure some interested parties.

**28.** Defendant engages in a circular argument in an attempt to show that plaintiff would not prevail under the first of the *Dataphase* prongs. Defendant argues that, because the plaintiffs do not have the right to prayer at the graduation ceremony, they therefore could have no right which would be violated. The court is of the opinion that it should consider whether plaintiffs have a right that could be violated under the third prong of the *Dataphase* test, the right being assumed under the first and second. The court also finds that defendant need not establish that all four of the *Dataphase* prongs are violated, but rather, that the plaintiffs, in order to succeed on a motion for a preliminary injunction, must show that greater weight of argument under the four prongs militate in favor of an injunction.